A & S CORPORATION, a corporation, and Pioneer Trust & Savings Bank, a corporation, as Trustee under Trust No. 5028, Plaintiffs,

v.

CENTENNIAL INSURANCE COMPANY, a corporation, United States Fire Insurance Company, a corporation, National Fire Insurance Company of Pittsburgh, Pa., a corporation, and Boston Insurance Company, a corporation, Defendants.

No. 61 C 1048.

United States District Court
N. D. Illinois,
Eastern Division.
April 15, 1965.

Melvin Klafter, Samuel Fumel, Chicago, Ill., for plaintiffs.

Clausen, Hirsh, Miller & Gorman, Chicago, Ill., for defendants.

CAMPBELL, Chief Judge.

This cause having come on before the court for trial without a jury, said jury having been waived by the parties, the court having heard the testimony of witnesses for both the plaintiffs and the defendants and having fully considered the evidence and the briefs of the parties, hereby makes the following findings of fact, and conclusions of law and enters the following judgment order:

### FINDINGS OF FACT

1. A & S Corporation, hereinafter referred to as the "plaintiff" or "A & S", and Pioneer Trust and Savings Bank, hereinafter referred to as "Pioneer", the plaintiff corporations, both have their principal place of business and are incorporated in the State of Illinois. The defendant, Centennial Insurance Company, a corporation, has its principal place of business and is incorporated in the State of New York. Defendant, United States Fire Insurance Company, a corporation, has its principal place of business and is incorporated in the State of New York. Defendant National Fire Insurance Company of Pittsburgh, Pa., a corporation, has its principal place of business and is incorporated in the State of Pennsylvania. Defendant, Boston Insurance Company, a corporation, has its principal of business and is incorporated in the State of Massachusetts. All of the above listed defendant insurance companies are authorized to do business in the State of Illinois.

2. This suit is brought upon four (4) policies of fire insurance issued by the defendant corporations to the plaintiff, insuring plaintiff's bowling alley operat-

ed on premises leased at 3016–24 North Central Avenue, Chicago, Illinois. The leased premises are and were owned by Pioneer Trust & Savings Bank, a corporation, as Trustee under Trust No. 5028, a co-plaintiff and co-insured, but which co-plaintiff has no interest (except to insure payment of rest) in the proceeds under the policies in question.

3. Recovery is sought under the business interruption endorsement of the following policies:

| COMPANY | POLICY NO. | AMOUNT |
|---|---|---|
| Continental Insurance Company | #16242 | $10,000.00 |
| United States Fire Insurance Co. | #99464 | $10,000.00 |
| National Union Fire Insurance Co., of Pittsburgh, Pa. | #2313759 | $10,000.00 |
| Boston Insurance Company | #143496 | $15,000.00 |
| TOTAL INSURANCE | | $45,000.00 |

4. The applicable provisions of the aforesaid policies provide in part as follows:

"1. Subject to all its provisions and stipulations, this policy covers only against loss directly resulting from necessary interruption of business caused by damage to or destruction of real or personal property by the peril(s) insured against during the term of this policy, except as hereinafter specifically excluded or limited, on premises occupied by the insured as * * * and situated * * * Illinois.

"2. Recovery in the event of loss hereunder shall be the ACTUAL LOSS SUSTAINED by the insured directly resulting from such interruption of business, but not exceeding the reduction in gross earnings less charges and expenses which do not necessarily continue during the interruption of business, for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace such part of the property herein described as has been damaged or destroyed, commencing with the date of such damage or destruction and not limited by the date of expiration of this policy. Due consideration shall be given to the continuation of normal charges and expenses, including the insured with the same quality of service which existed immediately preceding the loss.

"3. Resumption of Operations: It is a condition of this insurance that if the Insured:

(a) by resumption of complete or partial operation of the property herein described, whether damaged or not, could reduce the loss resulting from the interruption of business, such reduction shall be taken into account in arriving at the amount of loss hereunder.

"4. Gross Earnings: For the purposes of this insurance 'Gross Earnings' are defined as the sum of:

(a) Total net sales, and

(b) Other earnings derived from operation of the business less the cost of:

(c) Merchandise sold, including packaging materials therefore,

(d) Materials and supplies consumed directly in services(s) sold, and

(e) Service(s) purchased from outsiders (not employees of the Insured) for resale which do not continue under contract.

No other costs shall be deducted in determining 'Gross Earnings.'

In determining 'Gross Earnings' due consideration shall be given to the experience of the business before the date of damage or destruction and the probable experience thereafter had no loss occurred.

"5. Contribution Clause: In consideration of the rate and form under which this policy is written, this Company shall be liable, in the event of loss, for no greater proportion thereof than the amount hereby covered bears to 50% of the gross earnings that would have been earned (had no loss occurred) during the 12 months immediately following the date of damage to or destruction of the described property.

"6. Expense to Reduce Loss: This policy also covers such expenses as are necessarily incurred for the purpose of reducing any loss under this policy (except expense incurred to extinguish a fire), not exceeding, however, the amount by which the loss under this policy is thereby reduced. Such expenses shall not be subject to the application of the Contribution Clause."

5. On June 8, 1960, while the policies were in full force and effect, a fire occurred on the insured premises causing total damage to the building, bowling alley and equipment, resulting in an interruption of plaintiff's bowling related businesses.

6. The policies sued on contain provisions requiring written notice to the insurance companies of any loss, a complete inventory of property, and that within sixty (60) days after the loss, there be filed a sworn proof of loss statement, setting forth the amount of the loss in detail. Plaintiff filed such a proof of loss with the companies on September 7, 1960.

7. The defendant companies had actual knowledge of the fire no later than June 9, 1960, at which time they dispatched an adjuster from the Cook County Loss Adjustment Bureau to inspect and review the loss. Said adjuster discussed settlement of the policies with plaintiff's insurance adjuster during the period immediately subsequent to the fire.

8. The defendant companies at no time prior to the institution of the instant suit objected to plaintiff's formal failure to file a timely proof of loss in accordance with the wording of the policies, rather, they acknowledged liability for a business interruption loss and accepted without objection the proof of loss statement filed on September 7, 1960.

9. The adjusters for the defendant companies did not request a formal proof of loss from the plaintiff.

10. There was and is a custom and usage among insurance adjusters in Cook County, Illinois, that formal, sworn proofs of loss are not required unless insurance company adjusters specifically request them.

11. There was, on June 8, 1960, and for the period here in question, a custom and usage among insurance adjusters that fire insurance damage claims be adjusted prior to claims for business interruption relating to premises damaged by fire.

12. The fire insurance adjusting representatives of defendants held in abeyance lessor's restoration of the damaged premises pending adjustment of its fire loss claim. Plaintiff, therefore, was unable to commence reconstruction of the bowling alley facilities on the leased premises until after the fire damage claims were adjusted.

13. Plaintiff's lease with the lessor building owner (Pioneer) provided that in the event of extensive fire or demolition of the premises the lessor had an election to terminate the lease or to restore the property within a period of six months and hold the plaintiff under the lease. The lessor, immediately after the fire, did elect to reconstruct said premises and hold plaintiff under the lease.

14. Plaintiff could not proceed with new building plans until the defendants' agent, Cook County Loss Adjustment

Bureau, checked and approved the plans; and as soon thereafter as the approval was given, the lessor expeditiously proceeded with putting the building plans into operation, hiring contractors, contracting for material, obtaining a building permit and all things necessary for the erection of a new structure. The work of reconstructing the bowling alley was performed with due diligence and dispatch from the date plaintiff could conceivably commence restoration of the bowling alley until January 28, 1961, when the alley was reopened to the public for business. Defendants' agent, the Cook County Loss Adjustment Bureau, stopped both the plaintiff and the lessor from clearing debris following the fire, and did not sanction such clearing until June 29, 1960.

15. The period from June 8, 1960, the date of the fire, to January 28, 1961, the date the building was sufficiently rebuilt and the bowling facilities were restored, is the period of business interruption.

16. In accordance with the terms of the policies, having considered the experience of plaintiff's business prior to the fire and, assuming the fire had not occurred, the business' probable experience after the fire, I find that the period from June 8, 1958 to January 28, 1959, best represents what the gross earnings and profits would have been from June 8, 1960 to January 28, 1961, the period of the actual business interruption loss. During this 1958–1959 similar period the profit realized by the business was $2,821.88. Accordingly, I find plaintiff's loss of profit to be $2,821.77.

17. In arriving at the above profit figure (Findings of Fact 16) for purposes of determining depreciation I find that; the bowling alleys were purchased in 1940 at a cost of $58,189.36; that depreciation is allowable over a thirty (30) year period ($1,939.65 per year); that the furniture, fixtures, cooling equipment, pinspotters and leasehold improvements are depreciated over 16⅔ years in the total amount of $4,158.13; and, that the above determined yearly depreciation figure of $6,167.78 is for the said 7⅔ months period $3,940.51.

18. Plaintiff's monthly non-abatable expenses (those which must be and were necessarily continued) for the business interruption loss period were as follows:

Rent, $1,100.00; Interest, on business loan, $175.00; Advertising, $100,00; Insurance, $183.25; Licenses, $182.00; Sanction Fees and Dues, $100.00; Printing & Postage, $10.00; Telephone, $30.00; Electricity, $.37; Legal and Audit, $175.00; Salaries, $700.00; Payroll taxes, $102.00; Bank charges, $11.00; Total monthly non-abatable expenses, $2,872.62.

Accordingly, I find plaintiff's total non-abatable expenses for the 7⅔ months of business interruption loss to be $22,-033.00.

19. The sum of $1,000.00 per month purporting to represent "officers salaries" is not a non-abatable expense during the period of suspension, it having never been paid to the president of plaintiff's corporation.

20. Plaintiff's substitute office rent ($200.00 per month) was neither a non-abatable expense nor was it an "expense to reduce loss" in that it in no way served to reduce the fire loss.

21. In accordance with the terms of the policies I find plaintiff's business interruption loss for the period from June 8, 1960 to January 28, 1961 to have been $24,854.77, which sum represents profits ($2,821.77) plus non-abatable expenses ($22,033.00).

22. The contribution clause of the policies is not an issue in the instant case.

From which facts, I conclude as a matter of law:—

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and subject matter of this action.

2. On June 8, 1960, the defendant companies were contractually obliged to reimburse plaintiffs for loss directly resulting from necessary interruption to plaintiffs business caused by fire damage

and destruction of plaintiff's business property.

3. Under the terms of the insurance contracts, plaintiff is entitled to that sum which represents actual loss to its business, not exceeding the reduction in gross earnings, less charges and expenses which do not necessarily continue during such interruption of business for the length of time required, with the exercise of due diligence and dispatch, to rebuild, repair or replace the insured property damaged or destroyed, commencing with the date of the destruction.

4. A business interruption policy is designed to do for the business what the business would have done for itself had no loss occurred.

5. "Gross Earnings" is defined in the policies as the sum or total net sales and other earnings derived from the operation of the business, less the cost of merchandise sold, materials and supplies consumed directly in services sold, and services purchased from outsiders for re-sale which do not continue under the contract.

6. The insurance contracts provide that in determination of "gross earnings," due consideration shall be given to the experience of the business before the date of damage or destruction, and the probable experience thereafter had no loss occurred.

7. The defendants through their duly authorized agents, Cook County Loss Adjustment Bureau, waived filing of formal notice claim and proof of loss.

8. The claims filed by plaintiffs adjuster, although admissible probative evidence, are not absolutely binding on plaintiffs in this suit.

9. Defendants are estopped to assert that plaintiff failed to file written proofs of loss within sixty (60) days from the date of loss by reason of their accepting written proofs of loss from plaintiff subsequent to the sixty (60) day period without objection and further, in making an offer of settlement thereon.

10. Written proof of loss was made by plaintiff immediately following the settlement of its fire loss claim, in accordance with the custom and usage of insurance adjusters.

11. The proper period of suspension of the insured plaintiff's business was 7⅔ months (June 8, 1960 to January 28, 1961), which represents that period of time in which the insured, using due diligence and dispatch, could have and did repair the premises following the fire loss.

12. The insured business records for the year immediately preceding the fire were not wholly reliable, thus necessitating the use of figures for the previous fiscal year—July 1, 1958 to June 30, 1959.

13. The insured's recovery for the 7⅔ months suspension period was properly based on the experience of the business in the fiscal year ending June 30, 1959.

14. The insured is not entitled, under the terms of the policy, to treat the sum of $1,000.00 per month for officers' salaries as a continuing expense, inasmuch as this sum was never paid to Mr. John Podney, president of the plaintiff corporation.

15. The insured is not entitled, under the terms of the policy, to treat the sum of $200.00 per month for substitute office rent as a continuing expense, inasmuch as this expense did not serve to reduce the loss sustained in any way.

16. The "contribution clause" of the policies is not pertinent to these actions.

### JUDGMENT

It is therefore ordered, adjudged and decreed that the plaintiff, A & S Corporation, have and recover from the defendants, Centennial Insurance Company, United States Fire Insurance Company, National Union Fire Insurance Company of Pittsburgh, Pa., and Boston Insurance Company, the sum of $24,854.77 and its costs in this action.