**SUPERMARKETS OPERATING COMPANY**
and
**Fairless Hills Food Company, Inc., Plaintiffs,**

v.

**ARKWRIGHT MUTUAL INSURANCE COMPANY, Defendant,**
and
**PHILADELPHIA ELECTRIC COMPANY and Atlantic Thrift Center of Fairless Hills, Inc., Third-Party Defendants.**

Civ. A. No. 36594.

United States District Court
E. D. Pennsylvania.

Aug. 17, 1966.

Bernard M. Borish, Philadelphia, Pa., for plaintiffs.

George E. Beechwood, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

JOHN W. LORD, Jr., District Judge.

This is a suit on an insurance policy. The matter is presently before the Court on the Motion of Plaintiffs, Supermarkets Operating Company and Fairless Hills Food Company, Inc., for summary judgment pursuant to Fed.R.Civ.P. 56. The diversity of citizenship of the parties and the requisite amount in controversy are properly set forth.

On November 20, 1959 one of the plaintiffs, Fairless Hills Food Company, Inc. (hereafter referred to as Fairless), became lessee of a portion of a building known as Store Number 5 of Bargain City, U.S.A., Inc. Bargain City, Inc. was the lessor. The lease was to continue for a period of ten years, and under its terms the lessee's obligation to pay $100,000 rent annually, in monthly installments, continued notwithstanding destruction of the building occupied. In the same paragraph of the lease, however, it was also agreed that the lessee's rental obligation would be credited with the "proportionate share of any proceeds of rent insurance which [the] lessor may be entitled to receive." (¶ 30, *Rider to Lease Agreement* of November 20, 1959).

On December 18, 1962, the defendant issued an insurance policy to the plaintiffs under which the defendant agreed to compensate the plaintiffs for certain

losses due to interruption of business resulting, *inter alia*, from destruction of the leased premises by fire. On October 4th and 5th, 1963, a fire occurred at the Bargain City location, destroying the building of which the demised premises were a part.

Under the policy the defendant, Arkwright Mutual Insurance Company, had agreed to be liable for the actual loss sustained to gross earnings, "less all charges and expenses which do not necessarily continue during the period of interruption of the production or suspension of business operations." Gross earnings are defined as "the total net sales less cost of merchandise sold, materials and supplies consumed in the operations or service rendered by the insured; plus all other earnings derived from the operation of the business."

The policy limited the defendant's liability to losses occurring during the period within which "with due diligence and dispatch the property could be repaired or replaced and made ready for normal operations. * * *" The parties have agreed that this period was nine months from the date of the fire. *(Exhibit "O–1" to affidavit of Richard H. Opperman,* defendant's Philadelphia District Adjustor). During this period Fairless made rental payments to its lessor, and upon payment of the commuted value of the lease was ultimately able to secure its cancellation. *(Exhibit "B–1" to affidavit of Milton Perlmutter,* President of Fairless Hills Food Company). In the event it is determined that the rental payments were included under the insurance contract as "necessarily continuing expenses", it has been agreed that $66,225.00 represents the recoverable amount.

The plaintiffs made demand on the defendant for the $66,225.00. *(Exhibit "O–1",* supra). Upon its refusal to pay this amount, the present action was instituted.

In opposition to plaintiffs' motion, the defendant offers essentially three arguments. First, it asserts that Fairless' obligation to pay rent was terminated upon destruction of the premises, and thus that the payments made thereafter were wholly voluntary and not "necessarily continuing". Second, it argues that the policy contained no mention of leases, rental obligations or related terms and, therefore, that it would be reading too much into the contract to conclude that such an obligation was within the contemplation of the parties. Finally, it is asserted that Fairless failed to carry out its obligation to have applied to its rental obligation any proceeds of rent insurance that the lessor was entitled to receive.

■ The only other argument advanced by the defendant is that Fairless failed to cooperate in that it refused to supply the defendant with a copy of its lease. This assertion is controverted by the plaintiffs' affidavit and exhibit (A–2), to which the defendant has not filed a response. The assertions of fact contained within the plaintiffs' affidavit will, therefore, be taken as admitted, and this argument will not be discussed further. See Rockoff v. Vitex Manufacturing Co., Ltd., 230 F.Supp. 23, 25 (D.C. Virgin Islands 1964), aff'd 342 F.2d 996 (3rd Cir. 1965).

## DISCUSSION

■ In support of its contention that destruction of the premises terminated Fairless' obligation to pay rent, the defendant cites the case of Solomon v. Neisner Bros., Inc., 93 F.Supp. 310 (E.D. Pa.1950), aff'd 187 F.2d 735 (3rd Cir. 1951). In that case the court properly observed that "Where only an interest in part of the building is demised, upon the total destruction of the building, ordinarily the whole estate demised would be extinguished;" and the obligation to pay rent would thereby be terminated. (93 F.Supp. at p. 315) This is in keeping with the general principle that the obligation to pay rent continues only so long as there is something to which the lease might attach. Usually, this consists of the land beneath the structure. Cf. Demas v. Laskey, 358 Pa. 633, 58 A.2d 134 (1948); Sankey v. Martin, 93 Pa.

Super. 389 (1928); Solomon v. Neisner Bros., Inc., supra, 93 F.Supp. at p. 314 and authorities contained therein.

■ This is to be distinguished from the situation where one leases a building in its entirety. Under these circumstances, it is the law of Pennsylvania—by which we are bound—that the lease includes the land beneath the building, and, in the absence of a contrary provision in the lease, the obligation to pay rent continues for the remainder of the term. See Demas v. Laskey, supra; Sankey v. Martin, supra; cf. Moving Picture Co. of America v. Scottish Union & National Ins. Co. of Edinburgh, 244 Pa. 358, 90 A. 642 (1914); Paxson & Comfort Co. v. Potter, 30 Pa.Super. 615 (1906).

■ Admittedly, the lease under consideration was for a portion of a building known as Store Number 5 of Bargain City, U.S.A., Inc. However, Fairless expressly covenanted to continue its rental payments, notwithstanding the destruction of the building. The Court is aware of no public or private policy which would preclude such an agreement, especially where, as here, the parties were on an equal footing, both being corporations of some substance. Moreover, there is the mitigating factor in paragraph 30 of the lease which gave Fairless the right to have its rental obligation credited with any proceeds of rent insurance that the lessor may have been entitled to receive.

■ This Court's examination of the authorities indicates that under these circumstances the Pennsylvania courts would find that any rights Fairless may have had under the general principles enunciated above were relinquished to the extent that they conflicted with the express terms of the lease. To this extent, the payments were not voluntary as the defendant contends. Inasmuch as the lessor would have been able to enforce his rights in an appropriate legal proceeding, the plaintiffs' expense under the lease did "necessarily continue".

■ However, upon examining the pleadings, affidavits, interrogatories and related materials, it is the judgment of this Court that the facts have not been sufficiently developed to permit the entry of summary judgment at this time. As it stands now, there are at least two very serious questions which prevent the Court from ruling in the plaintiffs' favor. The first concerns the intent of the parties as to whether the rental obligation was included as a recoverable continuing expense; the second involves an examination of Fairless' conduct with respect to its obligation to mitigate damages.

■ The Court quite agrees that where an insurance policy is ambiguous, it must ordinarily be interpreted against its author. Sykes v. Nationwide Mutual Ins. Co., 413 Pa. 640, 198 A.2d 844 (1964); Lovering v. Erie Indemnity Co., 412 Pa. 551, 195 A.2d 365 (1963); Beryllium Corp. v. American Mut. Liability Ins. Co., 223 F.2d 71, 49 A.L.R.2d 1256 (3rd Cir. 1955). And an examination of the policy indicates that there is an ambiguity, at least superficially. Under its terms the plaintiffs were entitled to be compensated for two separate items. First, for gross earnings lost during the nine month period, and second, by implication, for expenses which necessarily continued. The specific language of the policy is as follows:

"The policy covers only the actual loss sustained by the insured due to interruption of business as a result of physical damage caused directly by the perils insured against hereunder to the property utilized by the Insured * * *. In the event the Insured is wholly or partially prevented from producing goods or continuing business * * * this Company shall be liable * * * for the ACTUAL LOSS SUSTAINED (emphasis in the original) of the following:

"GROSS EARNINGS, less all charges and expenses which do not necessarily continue during the period of interruption of production or suspension of business operations."

The policy then continues on to describe what constitutes gross earnings

within the meaning of the agreement. It states that gross earnings shall be "the total net sales less cost of merchandise sold, materials and supplies consumed in the operations or service rendered by the Insured * * *"

■ Thus the defendant cannot argue that no continuing expenses were compensable. For by deducting from gross earnings only those expenses which do *not* necessarily continue, it has impliedly consented to cover those which do. The difficulty, however, is in determining what the parties meant by the term "necessarily continuing expenses". The policy sheds no light on the problem, as it is totally silent on the matter. The narrow question, thus, is whether or not the rental obligation of Fairless was one of the unidentified "necessarily continuing expenses" within the contemplation of the parties. When the policy is examined in connection with the overall purpose of this form of insurance, it is clear to this Court that the decision must await a further development of the case.

The policy now before the Court belongs to that category of insurance protection that is commonly called "business interruption" or "use and occupancy" insurance. It is designed to protect the earnings or profits that a business would have earned, had the event insured against not intervened. See generally 44 C.J.S. Insurance § 48; Annotation, 83 A.L.R.2d 885; Appleman, Insurance Law and Practice, Vol. 5, Sec. 3120; Quality Molding Company v. American National Fire Insurance Company, 272 F.2d 779 (7th Cir. 1959). Stated differently, it is intended to "do for the insured in the event of business interruption caused by fire, just what the business itself would have done if no interruption had occurred —no more." National Union Fire Insurance Company of Pittsburgh v. Anderson-Prichard Oil Corp., 141 F.2d 443, 445 (10th Cir. 1944); Northwestern States Portland Cem. Co. v. Hartford F. I. Co., 360 F.2d 531, 534 (8th Cir. 1965).

This discussion is relevant when considered in light of the settlement that eventually occurred in this case. The record is not entirely clear as to the accounting methods by which the parties arrived at the recoverable gross earnings. As stated previously, under the policy gross earnings consisted of "the total net sales less cost of merchandise sold, materials and supplies consumed in the operations or service rendered by the insured * * *" The plaintiffs, at page 4 of their supplemental memorandum, indicate that the figure for the cost of sales did not include the rental obligation. From this it is argued that the rental obligation must, therefore, have been considered to be a continuing obligation. Thus, the plaintiffs are, in effect, seeking a double recovery. For if the rental obligation was not deducted from gross earnings as a cost of doing business, the profit ultimately recovered was undiminished by that amount. This, then, would mean that recovery of that same amount as a continuing expense would, in substance, constitute a windfall to the plaintiffs. To the extent that the profits were undiminished by the rents which would normally be payable therefrom as a cost of doing business, the plaintiffs will have been better off because of the fire than they would have been otherwise.

The factual background of the case is insufficient to allow the Court to conclude, at this time, that such was the intent of the parties; especially is this so in light of the introductory phrase limiting the insured to the "actual loss sustained".

It may well be that the parties envisioned a recovery beyond actual loss, despite the introductory phrase mentioned above. In this event, the policy would be enforced, since "the issue is not whether [the] plaintiff suffered a loss, but whether the plaintiff suffered a loss insured against by the terms of the policies." Rogers v. American Insurance Co., 338 F.2d 240, 241 (8th Cir. 1964); Northwestern States Portland Cem. Co. v. Hartford Fire Ins. Co., 243 F.Supp. 386, 388 (D.Iowa 1965); Annotation, 83 A.L.R.2d 885 and authorities contained therein.

In any event, it is apparent that there is a reasonable dispute as to the meaning of the term "necessarily continuing expenses." The record does not resolve the problem. The agreement itself is ambiguous in that it is prefaced with the limitation "actual loss sustained", but continues on to create a reasonable belief that perhaps "necessarily continuing expenses" are compensable, even though they exceed actual loss. Accordingly, it is the judgment of this Court that this is not now ripe for summary judgment.

Apart from this, there is the further question concerning the obligation of Fairless to see that any rent insurance proceeds to which the lessor was entitled were applied to its rental obligation. There is no indication in the record as to the extent of Fairless' obligation in this regard. Nor is there any explanation as to the character of insurance which the lessor may or may not have had on the premises involved. In answer to this specific interrogatory Fairless explained that it had no knowledge of the details of such policies, although it believed such to exist. There is an indication that the lessor made claims for rent insurance for all other lessees in the building except Fairless without any explanation as to why Fairless was excepted. (Plaintiffs' affidavit and Exhibit "C–2"). There is thus no factual frame of reference to which the law could properly be applied in the determination of whether the plaintiffs satisfied their obligation under the policy. Even if it be assumed that there was no specific obligation under the policy or otherwise, it is questionable whether the plaintiffs' affidavits in support of their motion remove any question as to whether the general duty to mitigate loss was satisfied. It may be, upon further development of the case, that any responsibility that the plaintiffs had in this respect was accommodated. However, the Court cannot conclude now, as a matter of law, that it was.

For all of the foregoing reasons, the Motion of plaintiffs for summary judgment pursuant to Fed.R.Civ.P. 56 must be denied.

And now, to wit, this 17th day of August, A.D.1966, it is ordered that the Motion of the Plaintiffs, Supermarkets Operating Company and Fairless Hills Food Company, Inc., for summary judgment be and the same is hereby denied.