380 A.2d 758

**ALBERT M. GREENFIELD & CO., INC., Appellee,**

v.

**Philip J. KOLEA, Appellant.**

Supreme Court of Pennsylvania.

Argued April 1, 1976.

Decided Dec. 1, 1977.

Lord & Mulligan, John T. Mulligan, Frank H. Morgan, Jr., Media, for appellant.

Richard Max Bockol, Allen J. Levin, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

MANDERINO, Justice.

This is an appeal from an order of the Superior Court, affirming the judgment of the Court of Common Pleas of Delaware County. Appellee (lessor) had sued appellant (lessee) for breach of two lease agreements. The trial court awarded appellee $7,200.00. Appellant's motions for judg-

ment n.o.v., arrest of judgment, and new trial were denied. The Superior Court affirmed the trial court *per curiam. Greenfield v. Kolea*, 232 Pa.Super. 701, 331 A.2d 824 (1975). Appellant's petition for allowance of appeal was granted by us and this appeal followed. We reverse.

The appellee's claim in this case is based on two separate, but related, lease agreements. The first lease, executed on March 20, 1971, covered ". . . all that certain one story garage building and known as 5735–37 Wayne Avenue, extending to Keyser Street in the rear [Philadelphia] . . . to be used and occupied as storage of automobiles. . . ." This lease, executed for a term of two years beginning May 1, 1971, provided for an annual rental of $4,800.00. The second lease, covering adjoining property, was also executed on March 20, 1971. The second lease covered ". . . all those certain lots or pieces of ground known as 5721–33 Wayne Avenue . . . to be used and occupied for the sale and storage of automobiles . . ." The second lease, also executed for a two-year term beginning May 1, 1971, provided for an annual rental of $2,500.00. There was no building located on the real estate covered by the second lease. Neither lease contained a provision with respect to the tenant's obligations in the event of destruction of the building.

On May 1, 1972, after the appellant had occupied the premises for one year, fire completely destroyed the building covered by lease number one. The fire was labeled as accidental by the Fire Marshall's office. The day after the fire the remaining sections of the exterior walls were razed by the lessor, and barricades were placed around the perimeter of the premises covered by both leases. Appellant thereafter refused to pay rent under either of the leases.

The general rule has been stated that in the absence of a lease provision to the contrary, a tenant is not relieved from the obligation to pay rent despite the total destruction of the leased premises. *Magaw v. Lambert*, 3 Pa. 444 (1846); *Hoy v. Holt*, 91 Pa. 88 (1879).

The reason for the rule has been said to be that although a building may be an important element of consideration for the payment of rent, the interest in the soil remains to support the lease despite destruction of the building. It has also been said that since destruction of the building is usually by accident, it is only equitable to divide the loss; the lessor loses the property and the lessee loses the term. See generally, Sum.Pa.Jur. Landlord and Tenant, § 72.

Two exceptions designed to afford relief to the tenant from the harshness of the common law principle have been created. These exceptions reflect the influence of modern contract principles as applied in the landlord-tenant relationship.

The first exception provides that where only a portion of a building is leased, total destruction of the building relieves the tenant of the obligation to pay rent. *Moving Picture Co. of America v. Scottish Union & Nat'l. Ins. Co. of Edinburgh*, 244 Pa. 258, 90 A. 642 (1914). *See also Paxson & Comfort Co. v. Potter*, 30 Pa.Super. 615 (1906). This exception recognizes that in the leasing of a part of a building there is no implication that any estate in land is granted. This Court, in other words, has recognized that in a landlord-tenant relationship with respect to an apartment, the parties have *bargained for* a part of a building and not the land beneath.

The influence of contract principles of bargained for exchange is also apparent in the second exception to the general common law rule. The second exception is based on the doctrine of *impossibility of performance*, and is stated in *Greenburg v. Sun Shipbuilding Co.*, 277 Pa. 312, 313, 121 A. 63, 64 (1923):

"Where a contract relates to the use and possession of specific property, the existence of which is necessary to the carrying out of the purpose in view, a condition is implied by law, as though written in the agreement that the impossibility of performance arising from the destruction of the property without fault of either party, shall end all contractual obligations relating to the thing de-

stroyed." *See also Rest. Contracts* § 460, 6 *Corbin on Contracts*, § 1337.

As was said in *West v. Peoples First Nat'l. Bank & Trust Co.*, 378 Pa. 275, 106 A.2d 427 (1954),

". . . where a contract relates to specific property the existence or maintenance of which is necessary to the carrying out of the purpose of the agreement, the condition is implied by law, just as though it were written into the agreement, that the impossibility of performance or the frustration of purpose arising from the destruction of the property or interference with its use, without the fault of either party, ends all contractual obligations relating to the property. Moreover, impossibility in that connection means not only strict impossibility but impracticability because of extreme and unreasonable difficulty, expense, or loss involved." (footnote omitted.)

The *Rest. Contracts* § 454, also applies the test of impracticability rather than strict impossibility:

". . . [I]mpossibility means not only strict impossibility but *impracticability* because of extreme and unreasonable difficulty, expense, injury, or loss involved." (Emphasis added.)

In the instant case, it is apparent that when the building was destroyed by fire it became impossible for the appellee to furnish the agreed consideration—". . . all that one story garage building. . . ." Nothing in the first lease implies that any interest in the land itself was intended to be conveyed. It is also obvious that the purpose of the lease with respect to the appellant was thereby frustrated. As noted in the lease, the parties contemplated that appellant would use the building for the repair and sale of used motor vehicles. Without a building appellant could no longer carry on a used car business as contemplated by the parties at the time they entered into the lease agreement. It became extremely impracticable for the appellant to continue using the adjoining lot when his business office and repair stations were destroyed by the fire. Additionally, because of the dangerous condition created by the fire, the city required

appellee to barricade the property covered by both leases, thus preventing appellant from entering the property.

In reaching our decision that the accidental destruction of the building by fire excused the parties from further performance of their obligations under the lease agreements, we are cognizant of the fact that we are allocating the risk to be assumed by the parties. Such an allocation of risk can be accomplished in one of two ways. First, the parties could specifically provide for risk assumption with respect to certain possible contingencies. In the absence of an express recognition and assumption by the parties, the court is left with the task of determining what the parties would have done had the issue arisen in the contract negotiations. See Restatement, Second, Property (Landlord and Tenant) § 5.4. In reaching such a decision a court must consider many factors. As stated in 6 *Corbin on Contracts* § 1325:

> "There is no rule of law by which the issue can be deductively determined; it depends upon the practices and customs of men in like cases, upon the prevailing mores of the time."

In reaching a decision involving the landlord-tenant relationship, too often courts have relied on outdated common law property principles and presumptions and have refused to consider the factors necessary for an equitable and just conclusion. In this case, for example, if we applied the general rule and ignored the realities of the situation, we would bind the appellant to paying rent for barren ground when both parties to the lease contemplated that the building would be used for the commercial enterprise of repair and sale of used motor vehicles.

The trial court's decision to bind the lessee to the lease was simply an application of an outdated common law presumption. That presumption developed in a society very different from ours today: one where the land was always more valuable than the buildings erected on it. Buildings are critical to the functioning of modern society. When the parties bargain for the use of a building, the soil beneath is generally of little consequence. Our laws should develop to

reflect these changes. As stated in *Javins v. First Nat'l. Realty Corp.*, 138 U.S.App.D.C. 369, 372, 428 F.2d 1071, 1074, *cert. denied*, 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970):

> "Courts have a duty to reappraise old doctrines in the light of the facts and values of contemporary life—particularly old common law doctrines which the courts themselves created and developed. As we have said before, '[T]he continued vitality of the common law . . . depends upon its ability to reflect contemporary values and ethics.' " (Footnote omitted.)

The presumption established in *Magaw* and *Hoy, supra,* no longer has relevance to today's landlord-tenant relationships. It is no longer reasonable to *assume* that in the absence of a lease provision to the contrary the lessee should bear the risk of loss in the event of total destruction of the building. Where the parties do not expressly provide for such a catastrophe, the court should analyze the facts and the lease agreement as any other contract would be analyzed. Following such an analysis, if it is evident to the court that the parties bargained for the existence of a building, and no provision is made as to who bears the risk of loss if the building is destroyed, the court should relieve the parties of their respective obligations when the building no longer exists.

Accordingly, we reverse the order of the Superior Court, and remand to the trial court with directions to grant the appellant's motion for judgment n.o.v.

JONES, former C. J., did not participate in the decision of this case.

ROBERTS, J., filed a concurring opinion.

NIX, J., filed a concurring opinion.

POMEROY, J., concurs in the result.

ROBERTS, Justice, concurring.

I join in the opinion of the majority because the rule established reaches the same result as the Restatement, Second, Property (Landlord and Tenant) Section 5.4 (Unsuitable Condition Arises After Entry—Remedies Available) which states:

> Except to the extent the parties to a lease validly agree otherwise, there is a breach of the landlord's obligation if, after the tenant's entry and without fault of the tenant, a change in the condition of the leased property . . . caused suddenly by a nonmanmade force, makes the leased property unsuitable for the use contemplated by the parties and the landlord does not correct the situation within a reasonable time after being requested by the tenant to do so. For that breach, the tenant may:
>
> (1) terminate the lease. . . .

The unexpressed intent of the parties is thus irrelevant.

NIX, Justice, concurring.

Insofar as the majority opinion represents the adoption in this Commonwealth of Section 5.4 of the Restatement, Second, Property, I am in complete agreement. The common law rule that an accidental fire which totally destroys a building is no defense to the claim for rent for the premises, is clearly inappropriate in our present society.*

As I view our holding today, it replaces a rule of law, which may have had validity in a predominantly agrarian society but is clearly outmoded today.

---

* The rationale of the common law rule was stated in *Paxson & Comfort Co. v. Potter*, 30 Pa.Super. 615, 616 (1906):

> "This rule has its foundation in the fact that *the tenant is still in possession of the soil* on which the building was located and that *something remains to which the lease attaches.* He may use the land for some purposes and may reconstruct the building." (Emphasis added).

See also, *Supermarkets Operating Co. v. Arkwright Mut. Ins. Co.,* 257 F.Supp. 273 (D.C.Pa.1966); *Solomon v. Neisner Bros., Inc.,* 93 F.Supp. 310 (1950), aff'd, 187 F.2d 735 (CA3d); *Demas v. Laskey,* 358 Pa. 633, 58 A.2d 134 (1948); 32 Am.Jur., Landlord and Tenant, §§ 493, 494; Sum.Pa.Jur. Landlord and Tenant, § 72.