**Nicholas M. ROMER, Respondent,**

v.

**Donald L. TOPEL, Appellant.**

**No. C1–87–578.**

Court of Appeals of Minnesota.

Nov. 10, 1987.

Review Denied Jan. 20, 1988.

James Malcolm Williams, Brad Morris Begley, Minneapolis, for respondent.

Robert J. Foster, Charles Robenstein, Minneapolis, for appellant.

Heard, considered and decided by FORSBERG, P.J., and LANSING and NIERENGARTEN, JJ.

**OPINION**

NIERENGARTEN, Judge.

Nicholas Romer sued Donald Topel for damages and to recover proceeds from an insurance policy in order to rebuild a collapsed barn. The trial court awarded Romer $6,400 as a return of prepaid lease payments and $4,809 in consequential damages

and Topel appeals. We affirm in part and reverse in part.

## FACTS

Donald Topel owned 19 acres of land in Hennepin County. He purchased an adjacent acre with a barn. In 1981 Nicholas Romer purchased 20 acres to the north of Topel's property and then purchased an additional 1.25 acre tract from Topel which lies between Topel's barn acreage and his own property. Romer's newly acquired 1.25 acre tract gave him easy access to the barn; he also gained some high ground which allowed him easier access to the county road. Romer agreed to lease one-half of the barn from Topel plus access to the barn for a period of 99 years to stable his polo ponies. Although the lease specified consideration of $1.00, the trial court found that Romer paid $8,000 for the lease of the barn and $1,000 for the purchase of the 1.25 acres, through a contract for deed executed on March 6, 1981. In 1981 the barn had a useful life of 20 years.

Romer was advised to put support beams on his side of the barn and suggested Topel do the same. Topel chose not to and, in December 1982, his half of the barn collapsed. Topel and Romer shared the nine hundred dollar cost of closing off Romer's half of the barn which Romer continued to use for his horses. In March 1985, the remainder of the barn collapsed under the weight of snow, and because of structural weakness caused by the first collapse.

The lease provided that:
1. The parties could use their portion of the barn for any purpose.
2. The parties agreed to share the cost of insurance, taxes and cost of utilities.
3. Each side agreed to maintain their half barn in good repair.

Romer paid all the utility charges which included the electrical bill and the cost of installing a phone system. Topel claims he made no use of the electrical service. Topel paid the taxes and added the barn to his homeowner's insurance policy for a minimal additional premium. Topel mentioned the insurance cost and was told by Romer to "bill me," which he never did. When the first half of the barn collapsed, Topel collected approximately $13,000 from the insurance company. After the second collapse, he received approximately $8,000. Romer demanded that Topel rebuild the barn, or give him half the proceeds so that he could rebuild. Topel refused to do either. Romer was forced to transport and stable his horses in another location for a cost of about $4,800.

The trial court judge concluded that Topel breached his covenant to repair and maintain. As a result, Romer was entitled to $6,400 for diminished rental value, less the amount due on the contract for deed. Romer was awarded consequential damages of $4,807 and the lease remained in effect. Topel appeals the continuation of the lease and the award of consequential damages. Romer filed a notice of review and argues the trial court erred in not awarding him half the insurance proceeds received by Topel.

## ISSUES

1. Did the trial court err in continuing the lease but relieving Romer from a prorated portion of the consideration?

2. Did the trial court err in awarding consequential damages?

3. Did the trial court err in failing to award one-half of the insurance proceeds to respondent?

## ANALYSIS

### I

Minn.Stat. § 504.05 (1984) provides:

The lessee or occupant of any building, which without fault or neglect on his part, is destroyed or is so injured by the elements or any other cause as to be untenantable or unfit for occupancy, is not liable thereafter to pay rent to the lessor or owner thereof, unless otherwise expressly provided by written agreement; and the lessee or occupant may thereupon quit and surrender possession of such premises.

The trial court valued the lease of the barn at $8,000 and found that the barn

had a useful life of 20 years. The court determined that Romer had the use of the barn for four years at $400 per year and relieved him from payment of the $6,400 balance. The court continued the lease for the remainder of the 99 year term to allow Romer continued access to Topel's property for the purpose of rebuilding a barn for his horses, but Romer had no obligation to pay rent. The court erred.

> It is not to be supposed that the statute intended the lessee should be absolved from his obligation to pay rent, and yet his leasehold interest in the premises continue; that he should enjoy whatever benefit the lease might be to him, and at the same time avoid its burdens.

*Roach v. Peterson,* 47 Minn. 291, 292, 50 N.W. 80, 80–81 (1891). The trial court's continuation of the lease is reversed.

## II

■ Topel argues that the only remedy available to the lessee is termination of the lease. *See Restatement (Second) of Property* § 5.4 (1977). However that remedy applies only if there is "a sudden damage in the condition of the premises by a non-manmade force." *Id.* § 5.4 comment f. In this case the trial court found that Topel did not maintain his portion of the barn, that Topel's portion collapsed, and that the resulting structural damage caused the remaining portion of the barn to collapse. Thus, at least part of the collapse was not due to the non-manmade snow but to Topel's negligence. Assuming no negligence on Romer's part, Romer is entitled to damages. *See id.* §§ 5.4(2)(a), 10.2. The trial court did not err in awarding consequential damages when Topel breached the lease by failing to maintain his half of the barn.

## III

■ Romer argues he is entitled to half the proceeds of the insurance policy carried by Topel. The lease provided that:

> Lessor and Lessee agree to share equally all expenses of structure insurance on said barn and to share pro rata according to the use, any shared utilities.

Romer never paid for any insurance on the barn which was owned and insured by Topel; consequently, Romer has no claim to any of the insurance proceeds. There was no requirement that Topel rebuild or repair.

■ On the other hand, Romer does not have to pay for the use of a barn that no longer exists. *See* Minn.Stat. § 504.05. We agree with the Pennsylvania Supreme Court which said:

> Where the parties do not expressly provide for such a catastrophe, [in this case, a fire] the court should analyze the facts and the lease agreement as any other contract would be analyzed. Following such analysis, if it is evident to the court that the parties bargained for the existence of a building, and no provision is made as to who bears the risk of loss if the building is destroyed, the court should relieve the parties of their respective obligations when the building no longer exists.

*Albert M. Greenfield & Co. v. Kolea,* 475 Pa. 351, 357, 380 A.2d 758, 760 (1977). The trial court correctly relieved Romer of his rent payment obligations and awarded him consequential damages.

## DECISION

The trial court's award of consequential damages and its decision not to award insurance proceeds to respondent are affirmed. The trial court's continuation of the lease is reversed and the lease is terminated.

Affirmed in part, reversed in part.