J-A22002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ELMER E. KING | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RAY HARNISH & STACI HARNISH | |
| Appellants | No. 278 MDA 2016 |

Appeal from the Order Entered January 22, 2016
in the Court of Common Pleas of Lancaster County
Civil Division at No(s): CI-13-01858

BEFORE:  GANTMAN, P.J., PANELLA, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                **FILED OCTOBER 21, 2016**

Ray and Staci Harnish ("Appellants") appeal from the January 22, 2016 order of the Lancaster County Court of Common Pleas granting in part and denying in part their Petition for Return of Escrow Funds.  After careful review, we vacate the trial court's order and remand for further proceedings.

This matter has a long and tortured history.  The pertinent facts and procedural posture are as follows.  On December 18, 2009, Appellants and Elmer King ("Appellee") entered into a Lease Agreement for Appellee's residential property located at 6020 Mast Road, Narvon, Lancaster County, Pennsylvania ("the property").  The Lease Agreement provided a rental amount of $1,000.00 for the first six months, and $1,050.00 for each month for the remainder of the one-year lease term, which would renew automatically for an additional one-year term if not properly terminated

before the expiration of the lease term. *See* Lease Agreement, p. 1, ¶ 5, p. 2, ¶ 6. The Lease Agreement further provided that Appellee would complete certain reparations to the property prior to Appellants' move-in date.[1] *See* Lease Agreement, p. 2, ¶ 12.

After living in the property for three years, Appellants ceased rental payments. As a result, Appellee presented Appellants with a notice to quit and provided notice of termination of the Lease Agreement on December 28, 2012. Appellants did not vacate the premises, and Appellee filed a landlord/tenant complaint with the local Magisterial District Justice ("MDJ"). On February 20, 2013, the MDJ entered judgment in favor of Appellee in the amount of $1,777.10, and awarded Appellee possession of the property if the money judgment remained unpaid by the date of eviction.

Appellants appealed the MDJ's decision to the Lancaster County Court of Common Pleas and, on March 4, 2013, filed a praecipe to enter a rule to file complaint. Appellee filed a complaint on April 1, 2013, seeking possession of the property and damages for $5,472.00 of unpaid rent. *See* Complaint.

---

[1] Specifically, the repairs included "painting to be completed, water to home & barn up and running, oil heater ready to operate, electrical fixed and working." *See* Lease Agreement, p. 2, ¶ 12. Appellee completed some repairs at the property and attempted to arrange to make the other repairs. However, Appellants repeatedly ignored Appellee's phone calls and would not answer the door when Appellee went to the property.

Appellees failed to file a responsive pleading, and on May 30, 2013, the Prothonotary of the Lancaster County Court of Common Pleas entered judgment in favor of Appellee in the amount of $5,472.00. Further, on June 4, 2013, Appellee filed a praecipe for writ of possession, and Appellants were scheduled to be evicted on July 16, 2013.

Following a successful petition to open default judgment,[2] Appellants filed their Answer to the Complaint on June 17, 2013. In their Answer, Appellants claimed Appellee refused for nearly three years to make the agreed upon repairs. **See** Defendants' Answer to Plaintiff's Complaint, p. 1, ¶ 3. The Answer further claimed that Appellants had escrowed the rental payments due with a bank.[3] **See id.** at pp. 1-2, ¶ 5.

On August 15, 2013, Appellee filed a petition requesting that funds deposited by Appellants in the escrow fund be released to him, and be continually released to him on a monthly basis. On August 16, 2013, the

_____

[2] Appellants claimed in their petition to open default judgment that, despite having left more than four voicemail messages with their counsel and having also written to their counsel in excess of three times, counsel did not notify them that they needed to respond to Appellee's complaint.

[3] After filing their Answer, Appellants henceforth deposited the monies due under the Lease Agreement with the Lancaster County Court of Common Pleas Prothonotary.

Lancaster County Court of Common Pleas' business judge granted this petition.[4]

On September 4, 2013, Appellee filed an amended complaint claiming that, in addition to the sums Appellants paid to the Prothonotary and released to Appellee, rental arrearage of $3,694.90[5] remained outstanding. *See* Amended Complaint.[6] The amended complaint further sought immediate possession of the property. *Id.*

On September 23, 2014, Appellee requested arbitration. However, in between the September 23, 2014 filing of the request for arbitration and the December 18, 2014 arbitration, the court terminated the supersedeas of the appealed MDJ decision based on Appellants' failure to pay rent to the Prothonotary. This terminated Appellants' appeal of the MDJ award. As a result, on October 30, 2014, Appellants filed an application to make escrow

---

[4] Clearly, Appellants should have been awarded an opportunity to respond to Appellee's request. On August 19, 2013, apparently unaware of the August 16, 2013 order, Appellants filed an objection to the release of the escrow funds without a hearing. Obviously, the order had already been entered. Appellants never appealed this order.

[5] This claimed arrearage amount represented the difference between the original rents claimed ($5,472.00) and the judgment entered by the MDJ ($1,777.10).

[6] Between the petition to release escrow funds and the filing of the amended complaint, in February 2014, counsel for Appellants filed a motion to withdraw as counsel, claiming a complete failure of communication on behalf of Appellants as well as a failure to pay counsel fees. Counsel withdrew the petition in March 2014.

payments *nunc pro tunc*, explaining their failure to make those payments had resulted from "an honest mistake and apparent miscommunication on behalf of [Appellants] during a particular difficult personal time," and arguing that "to permit dismissal of [Appellants'] appeal in this matter would deny [Appellants'] of their fair day in [c]ourt, something the legal profession has worked to avoid in all matters." Application for Leave, ¶¶ 4, 18, 20. The trial court allowed Appellants to pay the amounts due into escrow, and they did. The court then withdrew the order terminating supersedeas.

The arbitration occurred on December 18, 2014. However, neither Appellee nor his new counsel[7] appeared at the arbitration. Accordingly, the arbitrator entered judgment for Appellants and against Appellee on the amended complaint. Appellee's new counsel was served with a copy of the arbitrator's award. Appellee did not appeal the arbitration decision. On February 9, 2015, Appellants filed a praecipe to enter judgment, and judgment was entered with notification mailed to Appellee.[8]

On April 9, 2015, Appellants filed a petition for the return of all deposited escrow funds deposited with the Prothonotary since July 2013, which Appellants claimed exceeded $20,000.00. In their petition, Appellants

---

[7] Appellee changed counsel five weeks prior to the arbitration, on November 10, 2014.

[8] This praecipe had also been served on Appellee's new counsel.

claimed the arbitrator's award represented an award in their favor on all counts of the amended complaint, and thus they were entitled to recovery of all amounts previously paid into escrow. The business judge entered a rule to show cause why Appellant's request should not be granted, and the rule was served on Appellee's new counsel.

Following receipt of the trial court's rule to show cause, on May 4, 2015, Appellee filed a *pro se* response to the petition to return all escrowed funds. In the response, Appellee claimed a date mix-up caused him to miss the arbitration, and further that he was not then aware of the arbitrator's ruling. **See** Appellee's Response to Petition to Return Escrow Funds, ¶¶ 3, 6.

On September 10, 2015, treating Appellee's response to the petition to return the escrowed funds as a petition to open judgment, the trial court entered an order denying Appellants' petition for the return of all escrow funds. Appellants filed a motion for reconsideration, which the trial court denied on September 30, 2015. However, on October 8, 2015, the trial court vacated its September 30, 2015 order and scheduled argument on Appellants' motion for reconsideration.

On November 10, 2015, the trial court entered an order granting in part and denying in part Appellants' motion for reconsideration. Specifically, the trial court scheduled a hearing regarding Appellants' petition for return of all escrow funds for December 18, 2015. The court further directed the parties to be prepared to address the issue of whether Appellants were entitled to recover rent escrow amounts from Appellee as a result of any

- 6 -

breach of the Lease Agreement. Further, the trial court noted the hearing would not include any claim by Appellee for the $3,694.90 in unpaid rent set forth in his amended complaint that was covered by the previous arbitration award entered against Appellee on December 18, 2014.

Following the hearing on December 18, 2015, and subsequent submissions by the parties, on January 22, 2016, the trial court granted in part and denied in part Appellants' petition for return of escrow funds.[9] Specifically, the court held as follows:

> 1. [Appellants'] Petition is GRANTED to the extent that [Appellee] is directed to pay [Appellants] the amount of $1,145.57 as reimbursement for the expenses incurred by [Appellants] as set forth in [Appellants'] Exhibit D-3. Said payment shall be forwarded to counsel for [Appellants], [] within thirty (30) days of the date of this order; and

> 2. [Appellants'] Petition is DENIED in all other respects, and [Appellee] shall be permitted to retain the balance of the escrow funds in the amount of $21,631.53 as rent for [Appellants'] possession of the property.

Trial Court Order, January 22, 2016.

Appellants filed a timely notice of appeal on February 16, 2016. Both Appellants and the trial court complied with Pa.R.A.P. 1925.

_____

[9] After the hearing but before the trial court's order on the matter, Appellee filed a post-hearing submission. On January 26, 2016, after the trial court entered its order, Appellants filed a petition to strike Appellee's post-hearing submission as irrelevant, inaccurate, and inflammatory. The trial court granted the petition and explained that Appellee's post-hearing submission had no bearing on the court's ruling.

Appellants raise the following claims for review, reordered for ease of disposition:

A. Did the Honorable [t]rial [c]ourt err by finding that [Appellee] had not waived his claim to the escrowed rental payments despite failing to include a claim for such monies in his [a]mended [c]omplaint?

B. Did the Honorable [t]rial [c]ourt err and abuse its discretion by ordering a hearing to address what escrow amounts were due to be returned to [Appellants], in effect granting [Appellee] a trial *de novo* despite the fact that [Appellee] had not adequately used the legal remedies available to him?

C. Did the Honorable [t]rial [c]ourt err by failing to award [Appellants] a return of the monies paid into the Prothonotary despite the fact that [Appellee] had never established a right to receive such monies despite carrying the burden of proof to do so?

Appellants' Brief, p. 6.

Our standard of review in non-jury cases is limited to a determination of whether competent evidence supports the findings of the trial court and whether the trial court committed error in the application of law. *Company Image Knitware, Ltd. v. Mothers Work, Inc.*, 909 A.2d 324, 330 (Pa.Super.2006), *appeal denied*, 929 A.2d 645 (Pa.2007). We consider the evidence in a light most favorable to the verdict winner and will reverse the trial court only if its findings of fact are not supported by competent evidence or if its findings are premised on an error of law. *Allegheny County Housing Authority v. Johnson*, 908 A.2d 336, 340 (Pa.Super.2006). Further, we "will respect a trial court's findings with regard to the credibility and weight of the evidence unless the appellant can

show that the court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence." ***J.J. DeLuca Co. v. Toll Naval Associates***, 56 A.3d 402, 410 (Pa.Super.2012) (citation omitted). With respect to questions of law, our standard of review is *de novo* and our scope of review is plenary. ***Step Plan Services, Inc. v. Koresko***, 12 A.3d 401, 408 (Pa.Super.2010). Finally, because contract interpretation is a question of law, this Court is not bound by trial courts' interpretations. ***Miller v. Poole***, 45 A.3d 1143, 1145 (Pa.Super.2012).

Appellants first claim the trial court erred by failing to determine that Appellee waived his claim to the escrowed funds by not including such a claim in his amended complaint. ***See*** Appellants' Brief, pp. 19-20. This claim lacks merit.

As the trial court noted, courts should consider "the factors necessary for an equitable and just conclusion[]" in deciding landlord-tenant matters. ***Albert M. Greenfield & Co., Inc. v. Kolea***, 380 A.2d 758, 760 (Pa.1977). The trial court explained its reasoning as to why Appellee did not waive his claim to the escrow funds in its November 10, 2015 order granting Appellant's motion for reconsideration of the denial of the request for return of all escrowed monies. There, the trial court explained:

> During the pendency of this action [t]he Honorable Jeffrey D. Wright issued an Order on August 15, 2013 granting [Appellee's] Petition to Release Escrow Funds, and ordered that the funds deposited in escrow by [Appellants] be released and continue to be released monthly to [Appellee]. Unfortunately, the Prothonotary failed to serve [Appellants] or their counsel with a copy of said Order. Subsequently, having received the monthly

- 9 -

escrow payments, [Appellee] filed an Amended Complaint asserting a claim for only those rental amounts which remained unpaid. [Appellants] filed an Answer to [Appellee's] Amended Complaint without New Matter or a Counterclaim. This [c]ourt is of the opinion that had [Appellants] been advised properly by the Prothonotary of the entry of Judge Wright's Order of August 15, 2013, (which released [Appellants'] escrowed rental payments to [Appellee]), the [Appellants] would have filed an appropriate Counterclaim against [Appellee] which would have permitted the Arbitration Panel to address the issue. Without said Counterclaim, the Arbitration Panel could only address those issues in the Amended Complaint properly before them which did not include a determination of which party was entitled to the rental payments placed in escrow. Given [Appellants'] continued possession of the property and [Appellee's] receipt of the monthly rental payments, the filing of the Amended Complaint did not result in any abandonment by [Appellee] of his claim for rental payments.

Trial Court Order, November 10, 2015, p. 2 n.1. The trial court continued to further explain the necessity of a full hearing on the merits as follows:

Accordingly, the only equitable manner in which to resolve this dispute is to hold a hearing on [Appellants'] Petition for Return of All Escrow Funds. All parties should be prepared to address the issue of whether [Appellee] is entitled to the rental payments released from escrow and whether [Appellants] are entitled to any set-off.

*Id.*

We find no error of law or abuse of discretion in the trial court's decision or reasoning.

Next, Appellants claim the trial court abused its discretion by holding a hearing on the merits of the matter on December 18, 2015. *See* Appellants' Brief, pp. 20-26. They claim Appellee never filed a motion to open the arbitrator's judgment awarded in their favor when Appellee did not present at the arbitration. *Id.* However, implicit in our determination *supra* that

- 10 -

Appellee did not waive his claim to the escrowed funds is the determination that the trial court did not abuse its discretion by holding a hearing on the merits of the matter on December 18, 2015. Accordingly, we need not further address Appellants' second claim herein.

Finally, Appellants claim that the trial court erred in awarding Appellee the monies paid into escrow. *See* Appellants' Brief, pp. 16-18. To a limited extent, we agree with Appellants.

The trial court explained its award of the escrow monies in terms of equity as follows:

> In this case, I balanced the relative equities between the parties and decided to grant [Appellee] the almost $22,000.00 in escrow funds as rent for [Appellants'] possession of his rental property for over two years after this action was begun. After a review of the pleadings and the testimony at the evidentiary hearing, I based my decision upon the following facts, []:
>
> 1. On December 18, 2009, the parties entered into a Residential Lease Agreement . . . [which] Agreement was a bona fide agreement wherein the parties were of equal bargaining power and all parties negotiated their own provisions. . . .;
>
> 2. Paragraph 12 of the Lease Agreement noted: 'Tenant has inspected the property and agrees to accept the property "as-is" except for the following: painting to be completed, water to home and barn up and running, oil heater ready to operate, electrical fixed and working';
>
> . . .
>
> 5. Notwithstanding [Appellants'] knowledge of the condition of the leased premises at the time they entered into the Lease Agreement, [Appellants] knowingly, voluntarily and intelligently executed the Lease Agreement, moved into the premises, and remained in the leased premises for *five years* until December 17, 2014;

- 11 -

6. The testimony of [Appellee] that [Appellants'] conduct prevented [Appellee] from reasonable efforts to inspect and repair the property is credible;

7. The testimony of . . . Stacy Harnish with regard to the condition of the property and the efforts made by [Appellee] to make needed repairs is less than credible;

8. The vast majority of the items listed by [Appellants] as needing repair do not impact the implied warranty of habitability and constitute improvements beyond the terms and conditions of the Lease Agreement;

9. Any items which impacted the implied warranty of habitability were either repaired by [Appellee] and/or [Appellants], or [Appellee] was prevented from repairing said items by [Appellants'] conduct or actions; . . .

(See Order of January 22, 2016 (emphasis added)[])[.]

[Appellants] lived in [Appellee's] rental property for three years before they decided the condition precedent had not been satisfied, the lease was breached, and the rent was no longer due and owing to [Appellee]. The uninhabitable conditions in which they claim to have been forced to live, they chose to live in for three years. The lease was a year-to-year term. At the expiration of the lease at the conclusion of the first year, and the second year, and the third year, [Appellants] exercised their option to remain in the rental property rather than flee the uninhabitable conditions in which they found themselves. After the commencement of this action, [Appellants] refused to relinquish possession of the rental property and chose to remain in what they deemed an uninhabitable home for an additional two years. It was their expectation to have their escrow payments refunded for two years of rent-free living in [Appellee's] property.

. . .

The evidence at the hearing established that the repairs identified in the lease were either made by [Appellee], or efforts by [Appellee] to make the repairs were thwarted by [Appellants]. In either case, [Appellants] were not relieved of their duty under the lease to make the required rental payments. Accordingly, [Appellee] was entitled to retain the escrowed funds with the exception of $1,145.57 as

- 12 -

> reimbursement for the expenses incurred by [Appellants] for sewer and heater maintenance for which the landlord, [Appellee], was responsible.

Pa.R.A.P. 1925(a) Opinion, filed March 23, 2016, pp. 14-16.

This resolution ignores the trial court's express statement prior to the December 18, 2015 hearing that the hearing would not address any claim by Appellee for the $3,694.90 in unpaid rent set forth in his amended complaint that was covered by the previous arbitration award entered against Appellee on December 18, 2014. Despite that qualification of the scope of the hearing, and based solely on its view of the equities in this matter, the trial court awarded Appellee the entirety of the escrowed funds, minus $1,145.57 Appellants incurred in repair costs. This award included the $3,694.90 previously awarded by the arbitrator which the trial court had indicated would not be addressed or altered. Based on the trial court's prior representations, this was error.[10]

_____

[10] In addition to the trial court indicating it would not revisit the arbitrator's award, we further note that we cannot agree with the court's characterization of Appellee's *pro se* letter response to its rule to show cause why the trial court should not grant Appellants' Petition for Return of All Escrow Funds ("Appellee's letter response") as a petition to open judgment. As this Court has explained, normally "[t]o open a default judgment, a party must: (1) promptly file a petition to open judgment; (2) provide a meritorious defense; and (3) offer a legitimate excuse for the delay in filing a timely answer." **Reid v. Boohar**, 856 A.2d 156, 160 (Pa.Super.2004). "[A]ll three factors must appear before a court is justified in opening a default judgment." **McCoy v. Pub. Acceptance Corp.**, 305 A.2d 698, 700 (Pa.1973). Here, Appellee did not file a petition to open judgment. Initially, Appellee's letter response was technically a legal nullity, as Appellee was represented by counsel at the time. **See Commonwealth v. Ali**, 10 A.3d 282, 293 (Pa.2010) (explaining that a *pro se* filing presented by an appellant
*(Footnote Continued Next Page)*

For the foregoing reasons, we vacate the trial court's January 22, 2016 order granting in part and denying in part Appellant's Petition for Return of Escrow Funds and remand the matter for further proceedings.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn, Esq._
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/21/2016

---

*(Footnote Continued)* ———

represented by counsel is a "legal nullity"). Further, simply stated, Appellee's letter response was not a petition affirmatively filed to request that the trial court open the judgment entered against Appellee. Instead, the letter response was Appellee's defensive reply to the trial court's rule to show cause regarding Appellants' requested return of escrowed funds. While we acknowledge that the equities of a case may play a large role in a trial court's determination of a petition to open judgment, a party must still file a timely petition requesting that the trial court open a judgment. ***McCoy***, 305 A.2d at 700. Appellee simply did not file a petition to open in this matter, and we decline to stretch the bounds of equity so far as to construe Appellee's letter response as such.