Elmer ROGERS, d/b/a Elmer's Plaza Bowl, Appellant,

v.

AMERICAN INSURANCE CO., and National Fire Insurance Co. of Hartford, Appellees.

No. 17696.

United States Court of Appeals Eighth Circuit.

Nov. 16, 1964.

Duane P. Benson, of Graham, Califf, Harper, Benson & Railsback, Moline, Ill., and Donald H. Sitz, of Lane & Waterman, Davenport, Iowa, made argument for appellant and filed brief.

Kenneth H. Haynie, of Bannister, Carpenter, Ahlers & Cooney, Des Moines, Iowa, made argument for appellees and filed brief with Paul Ahlers, of Bannister, Carpenter, Ahlers & Cooney, Des Moines, Iowa.

Before VOGEL, VAN OOSTERHOUT and MEHAFFY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an action brought by plaintiff Rogers on two $25,000 business interruption policies, one issued by each of the defendant insurance companies. The material provisions of both policies are identical. It is conceded that the policies are in force, that they covered plaintiff's bowling establishment which was de-

stroyed by fire on July 14, 1962, and that each insurer is liable for one-half of the business interruption loss covered by their policy. The controversy is with respect to the scope of the coverage provided by the policies.

Plaintiff's landlord, pursuant to provisions of the lease, cancelled the lease after the fire. It is stipulated that the building could have been repaired or replaced by November 11, 1962. It is conceded that the policies provide for business interruption for the period from July 15 to November 11, 1962. It is established that plaintiff's net earnings from the operation of his business for said period, aside from the losses by reason of league bowling for the remainder of the season, amounted to $8,094.80. Judgment was entered based upon damages in such amount.

It is plaintiff's contention on this appeal that he sustained an actual loss of $19,266.24 above the amount for which judgment was entered, which additional damages were caused by his loss of earnings from league bowling for the entire 1962–63 season. In support thereof, plaintiff has produced accountants' figures and projections based upon past earnings covering the period from November 11, 1962, to April 30, 1963, the end of the league bowling season.

The basic facts are undisputed. Prior to the fire, plaintiff operated a twenty-lane bowling alley in Bettendorf, Iowa. In conjunction therewith, he operated a bar, a restaurant and a shop where bowling equipment was sold. Plaintiff's trade consisted of open bowling and league bowling. Open bowling is casual or walk-in bowling. League bowling provides the paramount source of revenue for plaintiff's alleys as well as for bowling alleys in general. League bowling is highly organized. A league is a group of four or more teams of bowlers, each team ordinarily consisting of five members. During a league season which commences in early September and extends to the end of April, a league will bowl weekly as a unit, each of the teams bowling a three game series with another

team in the league, such competition rotating within the league on a round robin basis. Throughout the season the same time each week, upon the same alley, is reserved for the league on a seasonal basis. The leagues are charged $1.35 per member for three games played each night and payment is made for each member of a participating team, including members absent and not bowling. About two and one-fourth hours is required for two teams to complete a three game series. Payment for league bowling is made during the bowling or immediately thereafter on a cash basis, usually by the team captains or by a league official. The rate charged per line for league bowling is the same as that charged for open bowling.

At the close of each bowling season, each league holds a meeting and among other things usually arranges with a bowling alley proprietor for its activities for the next season. Such arrangements are oral but are specific with respect to the day, hour and lanes reserved for each week. In Rogers' case, all teams using his facilities in 1961–62 had made arrangements prior to the fire to use his alleys for the 1962–63 season, which pretty well used up his available capacity. Commitments are usually honored for the entire season. Shifts from one bowling alley to another during a season are seldom made.

Rogers contends that because of the fire he was unable to reopen in time for the commencement of the league season in September and by reason thereof he lost league bowling for the entire 1962–63 season. The trial court agreed, stating: "The plaintiff in this case has without question shown that league bowling constituted a substantial portion of his business and in addition created luncheon and bar business. It has also been shown that because the rebuilding of the leased premises would not have been completed until November 11, 1962, the contemplated 1962–1963 league bowling business was lost." The court then properly goes on to state: "However, the issue in this case is not whether plaintiff suffered a

seasonal loss, but whether he suffered a loss insured against by the terms of the policies."

As grounds for reversal, the plaintiff urges:

1. The court erred in holding that only a portion of appellant's actual loss was sustained prior to the November 11, 1962, repair date.

2. The court erred in failing to give any consideration to the rules relating to the construction of insurance contracts.

■ Plaintiff complains that the court erred in not considering the well-established rules of construction requiring insurance contracts to be construed liberally in favor of the insured and strictly against the insurer, and the further rule that where ambiguity exists, parol evidence may be admitted to ascertain the true intention of the parties. It is firmly established in Iowa and elsewhere that such well-established rules do not come into play unless the contract is ambiguous. Iowa Nat'l Mut. Ins. Co. v. Fidelity & Cas. Co. of New York, Iowa, 128 N.W. 2d 891; Randolph v. Firemen's Fund Ins. Co., Iowa, 124 N.W.2d 528; O'Neil v. Glens Falls Ind. Co., 8 Cir., 310 F.2d 165, 167; Roth v. Western Assur. Co., 8 Cir., 308 F.2d 771, 774; see Annot. 83 A.L.R.2d 885, 896, 919.

In the Randolph case, the Iowa court found the policy unambiguous and reversed judgment for the insured. In response to the argument that the policy should be liberally construed in favor of the insured and that parol evidence should be admitted to ascertain the true meaning of the contract, the court states:

"Neither of these rules can be in real dispute, and citation of authorities would be a waste of time and paper. But neither of them comes into play unless it may fairly be said there is a real ambiguity in the terms of the policy." 124 N.W.2d 528, 529.

■ In our present case, the court specifically determined that the language of the contracts was not ambiguous and hence it was unnecessary to resort to rules of construction applicable to ambiguous insurance contracts. We do not understand that plaintiff disputes the foregoing legal principles. Plaintiff seeks relief upon the basis that the court's determination that there is no ambiguity is erroneous. We fully agree with the trial court that the policies are free of ambiguity.

The material policy provisions bearing upon coverage read:

"2. In the event of such damage or destruction this Company shall be liable for the ACTUAL LOSS SUSTAINED by the Insured resulting directly from such interruption of business, but not exceeding the reduction in Gross Earnings less charges and expenses which do not necessarily continue during the interruption of business, for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property herein described as has been damaged or destroyed, commencing with the date of such damage or destruction and not limited by the date of expiration of this policy. Due consideration shall be given to the continuation of normal charges and expenses, including payroll expense, to the extent necessary to resume operations of the Insured with the same quality of service which existed immediately preceding the loss."

"5. Gross Earnings: For the purpose of this insurance 'Gross Earnings' are defined as the sum of:

(a) Total net sales, and

(b) Other earnings derived from operations of the business,

less the cost of:

(c) Merchandise sold, including packaging material therefor,

(d) Materials and supplies consumed directly in supplying the

service(s) sold by the Insured, and

(e) Service(s) purchased from outsiders (not employees of the Insured) for resale which do not continue under contract.

No other costs shall be deducted in determining Gross Earnings.

In determining Gross Earnings due consideration shall be given to the experience of the business before the date of damage or destruction and the probable experience thereafter had no loss occurred."

"8. Special Exclusions: This Company shall not be liable for any increase of loss which may be occasioned by any local or state ordinance or law regulating construction or repair of buildings or structures, nor by the suspension, lapse or cancellation of any lease or license, contract or order, nor for any increase of loss due to interference at the described premises by strikers or other persons with rebuilding, repairing or replacing the property or with the resumption or continuation of business; nor shall this Company be liable for any other consequential loss or remote loss."

The trial court, in holding that the additional sums plaintiff here seeks to recover are not within the insurance coverage, states:

"The policies provide that the companies are liable 'for the actual Loss Sustained * * * for only such length of time as would be required * * * to rebuild * * * the property.' This provision fixes the period of time for which an insured can recover and prevents recovery of earnings which would have been lost after the business could have been reopened. The Court finds that plaintiff's recoverable loss of gross earnings is $8,094.80. This figure represents the gross earnings lost from all divisions of plaintiff's business from July 14, 1962 to November 11, 1962, including the loss of league bowling and incidental sales during such period.

"Plaintiff's recovery must be restricted to the loss of income that would have been earned during the reconstruction period, even though there may have been a substantial additional, but uninsured, loss consisting of reduction in income subsequent to the date of full restoration. It is common knowledge that a business interruption for any extended period may, and often does result in a loss of customers, some for a short period, some for longer periods and some permanently. A 'cut off' date is a necessity. Otherwise, claims would be opened to a degree of speculation which would be absurd. There would be no available method to determine with any degree of accuracy the amount of such losses. See George W. Clarke, 'Problem Claims under Business Interruption Policies', Practical Lawyer (May 1958).

"Another provision in the policy further supports the Court's position. The company's liability cannot exceed 'the reduction in Gross Earnings less charges and expenses which do not necessarily continue during the interruption of business.' Gross earnings are defined as the 'Total net sales, and other earnings derived from operations of the business.' The evidence shows that a bowler's fees were paid on each occasion while bowling, or immediately afterwards, whether he was engaged in league or open bowling. Plaintiff is seeking to recover loss of sales which he anticipated would occur after the reconstruction date. Profits anticipated from sales after November 11, 1962, are not 'net sales' or 'earnings derived' but rather expectancies in form, and, consequently, are not within the coverage provisions of the policies."

Plaintiff's argument that the separation of the reduction in Gross Earnings clause above quoted by commas from the time limitation expresses an intent not to tie such provision in with the time limitation is without merit. In the Randolph case, supra, the Iowa court states that punctuation marks are ordinarily of little aid in construing contracts and that punctuation will not control over words or change a meaning which is plain from a consideration of the whole document.

Additional support is found in paragraph 8 for the trial court's construction. Said paragraph provides that the insurer shall not be liable for any increase in loss which may be occasioned "by suspension, lapse, or cancellation of any lease or license, contract or order", and further provides against liability for "any other consequential loss or remote loss." Thus, if plaintiff should be right in his contention that he had a valid and enforceable contract with the league for the 1962–63 season, the provisions just set out would exclude recovery for any anticipated profits with respect to the portion of the contract to be performed after November 11, 1962.

Plaintiff concedes that with respect to a normal business operation, such as a grocer, clothier or a hotel, the policy is unambiguous but urges that the provisions really do not fit his situation. Plaintiff concedes that he has found no cited cases dealing with construction of the business interruption clause which support his position. We do not doubt that the consequences of a fire interruption with respect to effect upon business after restoration may be more serious in some businesses than in other businesses. However, we find no basis for finding that the interpretation of the coverage varies with the type of business.

Plaintiff has failed to demonstrate that the trial court erred in determining that the plain language of the policies precludes recovery for the additional damages he here seeks.

The judgment is affirmed.