GREAT NORTHERN OIL COMPANY, NOW KNOWN AS KOCH REFINERY, v. ST. PAUL FIRE AND MARINE INSURANCE COMPANY AND OTHERS.

227 N. W. 2d 789.

March 14, 1975—Nos. 44706, 44749.

*Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, J. Richard Bland,* and *O. C. Adamson II,* for defendants.

*O'Connor & Hannan, Joe A. Walters,* and *Kenneth B. Jones, Jr.,* for plaintiff.

Heard before Rogosheske, Kelly, and Yetka, JJ., and considered and decided by the court en banc.

ROGOSHESKE, JUSTICE.

Action for the recovery of a business-interruption loss allegedly sustained as a result of an accident occurring during the construction of an addition to plaintiff's oil refinery.[1] The jury, answering by special verdict, determined that a 96-day delay in the completion of the expanded facilities had resulted from the accident and assessed the per-day business loss of $9,132.77. Thereafter, the trial judge, adopting the jury's special verdict as to the length of delay and the per-day loss, found as a matter of law that the loss sustained fell within the business-interruption coverage of the insurance contract and ordered judgment against defendants for $776,745.92 plus costs and disbursements.

Defendants' two main issues on appeal are whether the accident resulted in damage to property covered by the insurance policy, and whether the accident resulted in a compensable business-interruption loss. Plaintiff contends that prejudgment interest denied by the trial court should have been awarded and

---

[1] This case was previously before this court on the issue of whether plaintiff's right to recover under the business-interruption provision of its policy was defeated by its contractual release of the construction contractor from liability for the accident which delayed construction of the expansion facility. We held the release did not bar this action. Great Northern Oil v. St. Paul Fire & Marine Ins. Co. 291 Minn. 97, 189 N. W. 2d 404 (1971).

included in the judgment.[2] We hold that the accident did not create an "interruption of business" within the meaning of the insurance policy and accordingly reverse. It is therefore unnecessary to consider the prejudgment interest issue.

Plaintiff, Great Northern Oil Company, owns and operates an oil refinery and river terminal at Pine Bend, Minnesota, as well as oil terminals in other areas of Minnesota and Wisconsin. The Pine Bend refinery has been in operation since 1955. Between 1955 and 1963, the daily refining output had increased from 23,500 barrels to 56,000 barrels. To insure its various facilities, plaintiff obtained a policy of property damage and business-interruption insurance from defendants. This policy was purchased through plaintiff's insurance agent and placed with defendants. The policy was renewed on August 12, 1964, for a 3-year period ending August 12, 1967. In September 1966, plaintiff decided to increase the capacity of its Pine Bend refinery by about 30 percent, from 56,000 barrels to 72,000 barrels per day. Accordingly, plaintiff entered into a $13.7 million construction contract on February 7, 1967, with The Litwin Corporation, Inc. The new construction was to take place on about 1 acre of land located immediately east of the existing facility. The new facility was to be connected to the existing facility by physically tying the pipes from the new construction to the existing refinery system. The proposed completion date for the new facility was January 1, 1968.

On June 16, 1967, an accident occurred which gave rise to plaintiff's claim for loss of earnings under the business-interruption clause of the insurance policy. On that date, a crane being used in the construction collapsed while lifting into position a 72-ton tank, technically known as the "primary tower absorber." The tower fell into the new construction area, causing

---

[2] The order denying plaintiff's motion for amended findings to award such interest is nonappealable, but our disposition of the case makes it unnecessary to invoke the provisions of Rule 102, Rules of Civil Appellate Procedure, in order to pass on this issue.

damage to accessory equipment. There was no damage to the existing facility and it continued its normal operation. By October 15, 1967, the damage caused by the tower collapse had been repaired and the construction was again at the pre-accident stage. The entire project was completed by June 1968, some 6 months after the scheduled completion date for construction of the expansion facilities.

The insurance policy provides in pertinent part:

"5.   INTEREST AND PROPERTY INSURED:

"(A)   All real and personal property owned by or in the custody of Insured while located at places described herein.

"(B)   Loss directly resulting from necessary interruption of business caused by insured perils to property described in (A) above.

\* \* \* \* \*

"7.   PERILS INSURED:  Except as hereinafter exluded, this policy insures all real and personal property against all risks of physical loss or damage. It also insures against loss directly resulting from necessary interruption of business caused by all risks of physical loss or damage.

\* \* \* \* \*

"9.   LOCATIONS INSURED:  This policy provides coverage at the below listed locations; owned, leased, rented or otherwise occupied by the Insured:

"Pine Bend Oil Refinery and River Terminal, Dakota County, Minnesota

"Oil Terminal at the foot of Washington Street Bridge, Minneapolis, Minnesota

"Oil Terminal, 499 Kentucky Street, St. Paul, Minnesota

"Oil Terminal, Hastings, Minnesota

"Oil Terminal, Two Rivers, Wisconsin

\* \* \* \* \*

"14.   SPECIAL CONDITIONS BUSINESS INTERRUPTION INSURANCE ONLY:

"(A)   RECOVERY:  Recovery in the event of loss hereunder

shall be the ACTUAL LOSS SUSTAINED by the Insured directly resulting from such interruption of business but not exceeding the reduction in Gross Earnings less charges and expenses which do not necessarily continue during the interruption of business, for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property herein described as has been damaged or destroyed commencing with the date of such damage or destruction and not limited by the date of expiration of this policy. Due consideration shall be given to the continuation of normal charges and expenses, including payroll expense, to the extent necessary to resume operations of the Insured with the same quality of service which existed immediately preceding the loss."

Plaintiff brought this action to recover the prospective earnings from the expanded plant that would have accrued had no accident occurred. It is argued that, but for the tower's collapse, the expanded facility would have been operational by January 1, 1968. Although earnings attributable to the expanded facility did not commence until June 1968, plaintiff maintains that it is entitled to recover potential lost earnings during the 96-day delay in construction under the business-interruption coverage of its policy.

■ The insurance policy provides coverage for "[l]oss directly resulting from necessary interruption of business caused by insured perils to [insured property]." Defendants argue that the policy did not afford coverage to new construction or property added to the plant subsequent to the issuance of the policy, and since the accident caused damage only to uninsured property, any resulting business-interruption loss is noncompensable. This argument is without merit. The policy clearly, by its express terms, extends insurance protection against "all risks of physical loss or damage" to "[a]ll real and personal property owned by or in the custody of Insured while located at places described herein." One of the described locations is the Pine Bend Oil Refinery. The damaged facility, while a new addition to the exist-

ing plant, was certainly property located at the Pine Bend refinery, and the damage to it was caused by a calamity in no way excluded by the policy. Thus, the property damaged by the accident was at an insured location and falls within the policy's protection against a business-interruption loss.

■ However, merely because damage to insured property may be shown, it does not follow that a business-interruption loss occurred. By its plain meaning, "interruption of business" is a breaking or suspension of production earnings of an operating business rather than an interruption of a construction schedule. The general purpose of business-interruption coverage is "to do for the business what the business would have done for itself had no loss occurred." A & S Corp. v. Centennial Ins. Co. 242 F. Supp. 584, 589 (N. D. Ill. 1965). Typically, this involves computing the earnings lost during the period necessary to restore the business to its pre-accident condition. This period is referred to as the "suspension period." For example, in A & S Corp. v. Centennial Ins. Co. *supra*, plaintiff's bowling facility was damaged by fire on June 8, 1960. All damage was repaired by January 28, 1961. The court held that plaintiff was entitled to recover under a business-interruption clause for the earnings lost during the suspension period, June 8 through January 28. Applying this reasoning to the instant case, plaintiff should, if the policy so intended, be entitled to recover for earnings lost from June 16, 1967, the date of the accident, through October 15, 1967, the date by which all damage had been repaired. However, the damage from the accident was confined to the area under construction, and it is factually undisputed that no loss of earnings from the operating facilities occurred during the suspension period from June 16 to October 15. Hence, there can be no recovery for a business-interruption loss under the quoted clause of the insurance contract, as there was no loss of earnings during the suspension period since the business would not, by itself, have been able to produce additional earnings during that period.

Similarly, in Rogers v. American Ins. Co. 338 F. 2d 240 (8 Cir.

1964), the insured obtained recovery for earnings lost from the date of the fire through the date by which all repairs could have been completed. The Court of Appeals affirmed the denial of recovery for earnings lost after the completion date even though the loss was shown to have resulted from the fire, quoting the lower court's analysis (338 F. 2d 243):

"Plaintiff's recovery must be restricted to the loss of income that would have been earned during the reconstruction period, even though there may have been a substantial additional, but uninsured, loss consisting of reduction in income subsequent to the date of full restoration. It is common knowledge that a business interruption for any extended period may, and often does result in a loss of customers, some for a short period, some for longer periods and some permanently. A 'cut off' date is a necessity. Otherwise, claims would be opened to a degree of speculation which would be absurd. There would be no available method to determine with any degree of accuracy the amount of such losses."

The court relied heavily on a provision of the insurance contract nearly identical to 14(A) of the policy involved in the instant case.

Provision 14(A) states that recovery for business-interruption loss is limited to the "ACTUAL LOSS SUSTAINED * * * for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair to replace [the damaged property], *commencing with the date of such damage or destruction* and not limited by the date of expiration of this policy." (Italics supplied.) During the suspension period prescribed by the policy, plaintiff sustained no loss of earnings such as would be compensable under the policy terms. Since the new facility's scheduled completion date was January 1, 1968, no potential profits were lost during the suspension period, which ended in October 1967.

Two cases cited by defendants demonstrate the measure of recovery in situations where damage to expansion facilities resulted but where the new facility's planned completion date was within the suspension period. In General Ins. Co. v. Pathfinder Petroleum Co. 145 F. 2d 368 (9 Cir. 1944), the insured was awarded $3,900, representing expected profits from the planned expansion of its production facility. The basis for the award was that the insured was able to prove that the expansion could have been made operational *within the suspension period.* Had the accident not occurred, the new facility would have earned $3,900 during the suspension period. Similarly, in Fidelity-Phenix Fire Ins. Co. v. Benedict Coal Corp. 64 F. 2d 347 (4 Cir. 1933), the insured sought to recover expected profits from the mining of a new coal seam. The court allowed the recovery of these profits, but as in Pathfinder, the new seam was to have been operational during the suspension period. In the instant case, the new facility was not to have been operational within the suspension period. Even if the June 16 accident had not occurred, the new facility would not have been completed until January 1968. No profits were expected during the suspension period, as was the situation in the Pathfinder and Fidelity cases.

Plaintiff, conceding that the policy language is not ambiguous, seeks to avoid the foregoing conclusions by arguing that the policy was an all-risk policy covering all business-interruption losses not expressly excluded, that the expanded facilities were to become an integral part of the existing facilities since they could not have independently increased the output of the refinery without tying into the existing plant, and that thus the expanded facilities were a relatively insignificant part of the completed whole. We are not persuaded. Assuming the truth of such factual assertion despite the absence of findings, and acknowledging the all-risk nature of the coverage and that plaintiff suffered a loss of anticipated earnings from the added facilities by reason of a delay in construction, we cannot escape the conclusion that the

facilities as a whole suffered no loss of earnings during the suspension period specified in the policy.

Reversed.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.