**DICTIOMATIC, INC., a Florida corporation, and Domingo Linale, an individual, Plaintiffs,**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY, a Maryland corporation, Defendant.**

**Nos. 93–2123–CIV–PAINE, 94–1692–CIV–PAINE.**

United States District Court, S.D. Florida, West Palm Beach Division.

June 15, 1999.

John Joseph Pappas, Butler Burnette & Pappas, Tampa, FL, for plaintiff.

Atlee W. Wampler, III, David Robert Cassetty, Wampler Buchanan & Breen, Miami, FL, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR ATTORNEY'S FEES AND COSTS AGAINST PLAINTIFFS AND THEIR COUNSEL

PAINE, District Judge.

This matter is before the court upon United States Fidelity & Guaranty Company (USF & G)'s Motion for Attorneys' Fees and Costs Against Plaintiffs and Their Counsel (DE 486–1).

Dictiomatic's Breach of Contract claims in Case No. 93–2123 (Count I and II) and USF & G's Declaratory Judgment Action in Case No. 94–1692 were tried before the court.[1] Upon consideration of all of the evidence presented in the Plaintiff's case-in-chief, as well as the applicable authority, pursuant to Federal Rule of Civil Procedure 52(c), the court concluded at the end of Plaintiff's case in chief that the Plaintiff

---

1. Prior to trial, this court bifurcated the bad faith and fraud claims from the breach of contract claims, leaving only Dictiomatic as a Plaintiff at trial. After the court rendered the ruling on the breach of contract claim, the Plaintiffs, including Domingo Linale, voluntarily dismissed the fraud claims.

had failed to carry its burden of proof by a preponderance of the evidence that Dictiomatic incurred expenses or suffered actual loss of business income as a result of the suspension of operations due to Hurricane Andrew. Pursuant to Rule 52(c), the court entered Findings of Fact and Conclusions of Law. No appeal of this court's final judgment was taken and the Findings of Fact and Conclusions of Law set forth in this court's prior orders remain undisturbed and are incorporated herein by reference.

### Summary of Facts and Conclusions of Law

After a 10 day trial during which the Plaintiff Dictiomatic was permitted ample opportunity to prove the factual allegations of the Complaint, this court dismissed this action with prejudice. The court concluded that the evidence, when weighed in favor of the Plaintiff and accepted as true without regard to credibility considerations, established that on August 23, 1992, the day of Hurricane Andrew, Dictiomatic was a company in debt with *de minimis* business income, with an overstocked inventory of undesirable products located in Singapore, attempting to posture to sell these products through a speculative marketing scheme that had never proved to be successful in selling electronic products. Further, the company had no more than $5,000 cash on hand and was carrying substantial debt in excess of one million dollars as a result of its investment in the development and manufacture of the T–1200 and T–1500 products and the subsequent lackluster sales thereof. Additionally, the evidence was undisputed that prior to the Hurricane, Dictiomatic did not have sufficient capital available to it to finance the development, manufacture, or marketing of new products. The court also specifically found as a matter of undisputed fact that Dictiomatic's failure to sell its products after August 24, 1992, was not the result of Hurricane Andrew. Rather, the lack of sales was due to the fact that,

just as before the Hurricane, the products offered were not in demand.

Notwithstanding the fact that on the day before the Hurricane, Dictiomatic was a fledgling company with no revenue to develop new products, and no foreseeable profits from existing products which were not in demand, in October, 1992 Dictiomatic submitted a written claim to USF & G for business interruption loss of $1,360,747 for alleged lost profits and earned continuing expenses incurred from August 24 through December 31, 1992. It later supplemented its claim to account for alleged loss of business income through June, 1993, when it went out of business. The relevant time frames of alleged lost profits were not supported by the evidence because it was undisputed that Dictiomatic was deprived of use of its business premises for a mere 4 days and that its business was interrupted for a mere 20 days.

Upon hearing the Plaintiff's own evidence, this court specifically found as a matter of fact that the Defendant USF & G acted timely and reasonably in reaching its decision in June, 1993, to deny Plaintiff's claim for this classification of contractual benefits under the business interruption policy. It is relevant to note for the purpose of this motion that these facts were gleaned from Plaintiff's own case and further that these facts were at all times prior to commencement of this action, in the possession of both Plaintiffs.

As a matter of law, to recover under the business interruption policy in this case, Dictiomatic was required to prove that it sustained property damage that is covered under the policy and that the damage was caused by a covered cause of loss; that there was an interruption to the business ("suspension of operations") which was caused by the property damage; and that there was an *actual loss of business income* during the period of time necessary to restore the business; and that the loss of income *was caused by* the interruption of the business and not by some other factor or factors. *Ramada Inn Ramo-*

green, Inc. v. Travelers Indemnity Co., 835 F.2d 812 (11th Cir.1988); *Supermarkets Operating Company v. Arkwright Mutual Ins. Co.*, 257 F.Supp. 273, 277 (E.D.Pa. 1966); *Manduca Datsun, Inc. v. Universal Underwriters Ins. Co.*, 106 Idaho 163, 676 P.2d 1274 (1984); *Berkeley Inn, Inc. v. Centennial Ins. Co.*, 282 Pa.Super. 207, 422 A.2d 1078 (1980); *Royal Indemnity Co. v. Little Joe's Catfish Inn, Inc.*, 636 S.W.2d 530 (Tex.App.1982); *Northwestern States Portland Cement Co. v. Hartford Fire Ins. Co.*, 360 F.2d 531 (8th Cir.1966); *Continental Ins. Co. v. DNE Corp.*, 834 S.W.2d 930 (Tenn.1992); *Great Northern Oil Co. v. St. Paul Fire & Marine Ins. Co.*, 303 Minn. 267, 227 N.W.2d 789 (1975). Dictiomatic failed to prove that but/for the 20 day suspension of operations, it sustained an actual loss of business income which was caused solely by the hurricane and not by other factors. Because the facts presented during Plaintiff's case in chief at trial supported a finding that Dictiomatic did not suffer a loss of business income during the period of interruption the court found that USF & G was not liable for business interruption proceeds under the insurance policy because its duty to pay never arose. (Citations from prior order omitted).

■ It is also relevant to the resolution of the present motion for fees, that the applicable law is quite clear—business interruption insurance is intended to return to the insured's business the amount of profit it *would have earned* had there been no interruption of the business ("suspension of operations") (citations from prior order omitted). As one treatise summarizes, "Generally business interruption endorsements are designed to do for the insured *what the business itself would have done* had no interruption occurred and the interest protected is the right to income generated by an operating business enterprise". 4 Appleman Ins.L. and P. Section 2329. In the present case, this court found that Dictiomatic failed to prove that but/for Hurricane Andrew it would have realized business income which was lost solely as a result of the Hurricane. Because Dictiomatic failed to establish that it would have realized *any* income during the time of restoration or immediately thereafter, sufficient to pay normal operating expenses or to generate profits, its claim for compensation under the subject policy failed as a matter of law.

■ The law is also well established that business interruption insurance may not be used to put Dictiomatic in a better position than it would have occupied without the interruption (citations from prior order omitted). What the Plaintiff sought in this case was a windfall—an infusion of insurance proceeds into a company that was already going out of business. Accordingly, based on the undisputed facts, as a matter of law, Dictiomatic was not entitled to recover business interruption insurance proceeds under the insurance policy (citations from prior order omitted).

■ It must also be noted that Florida law is clear that a claim for lost profits must be shown with a reasonable degree of certainty. *Crain Automotive Group, Inc. v. J & M Graphics, Inc.*, 427 So.2d 300 (Fla.App.1983); *Beverage Canners, Inc. v. Cott Corporation*, 372 So.2d 954 (Fla. 3rd DCA 1979); *Royal Typewriter Company v. Xerographic Supplies Corporation*, 719 F.2d 1092 (11th Cir.1983). In this regard, a satisfactory analysis of lost profits cannot use figures which result in too many variables. *Royal Typewriter Company v. Xerographic Supplies Corporation*, 719 F.2d 1092 (11th Cir.1983); *Beverage Canners, Inc. v. Cott Corporation*, 372 So.2d 954 (Fla. 3rd DCA 1979). The law is further well established that in order to recover lost profits, there must be an ongoing business with an established sales record and proven ability to realize profits at the established rate. *Daytona Migi of Jacksonville, Inc. v. Daytona Automotive Fiberglass, Inc.*, 388 So.2d 228 (Fla. 5th DCA 1980); *Conner v. Atlas Aircraft Corp.*, 310 So.2d 352 (Fla.App.1975); *Belcher v. Import Cars, Ltd.*, 246 So.2d 584

(Fla. 3d DCA 1971). Proof of *actual* profits for a reasonable time prior to the breach is required to establish lost profits. *Wash–Bowl, Inc. v. Wroton*, 432 So.2d 766 (Fla. 2d DCA 1983); *A & P Bakery Supply & Equipment v. Hawatmeh*, 388 So.2d 1071 (Fla. 3rd DCA 1980).

In this case, rather than establish lost profits with *any* degree of certainty based upon a proven ability to realize profits, the Plaintiffs offered only speculative, inflated predictions of future profits, which had no relation to actual profits just prior to the Hurricane. The undisputed facts and the well settled law mandated entry of judgment in favor of the Defendant at the close of the Plaintiff's case-in-chief. The court specifically finds that the legal arguments raised by the Plaintiff in this case were so clearly untenable under the undisputed facts, that the court's conclusions of law could have been made without the benefit of argument or research.

The Defendant now seeks an award of attorneys' fees against the Plaintiffs Dictiomatic, Inc. and Domingo Linale, and the law firm of Wampler, Buchanan and Breen P.A., the law firm representing the Plaintiffs. The Defendants contend that the Plaintiffs are liable for attorneys fees and costs pursuant to various Florida laws, *to wit*, the offer of judgment rule, civil theft statute and frivolous claim bar set forth in Fla. Stat. § 57.105. They further contend that Plaintiffs' counsel are personally liable pursuant to the federal bad-faith exception contained in 28 U.S.C. § 1927.

*Defendant's Entitlement to Attorneys Fees from Plaintiffs*

▮▮▮ Generally, Fla. Stat. § 768.79 [2] creates a right to reasonable costs and

attorney fees when two prerequisites have been fulfilled: (1) a party has served a demand or offer for judgment; and (2) that party has recovered a judgment at least twenty-five percent more or less than the demand or offer. *See Hannah v. Newkirk*, 675 So.2d 112, 114 (Fla.1996); *TGI Friday's, Inc. v. Dvorak*, 663 So.2d 606, 611 (Fla.1995). In order to satisfy the technical requirements of § 768.79(2),

> An offer must:
>
> (a) Be in writing and state that it is being made pursuant to this section.
>
> (b) Name the party making it and the party to whom it is being made.
>
> (c) State with particularity the amount offered to settle a claim for punitive damages, if any.
>
> (d) State its total amount.

Fla. Stat. § 768.79(2). Subsection (2) also provides that the "offer shall be construed as including all damages which may be awarded in a final judgment." *Id.* The purpose of this mechanism is to "terminate all claims, end disputes, and obviate the need for further intervention of the judicial process" by encouraging parties to exercise their "organic right ... to contract a settlement, which by definition concludes all claims unless the contract of settlement specifies otherwise." *Unicare Health Facilities, Inc. v. Mort*, 553 So.2d 159, 161 (Fla.1989). *See* Fla. Stat. § 768.79(1), (referring to the recovery of costs and attorney fees under the statute as "penalties" for the declining party's failure to accept the offer and terminate the litigation); *Aspen v. Bayless*, 564 So.2d 1081, 1083 (Fla. 1990).

▮▮▮ In the present case, on February 7, 1994, the Defendant served a written

---

**2.** Fla. Stat. § 768.79 provides in relevant part:

> Offer of judgment and demand for judgment.—
>
> (1) In any civil action for damages filed in the courts of this state, if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable

costs and attorney's fees incurred by her or him or on the defendant's behalf pursuant to a policy of liability insurance or other contract from the date of filing of the offer if the judgment is one of no liability or the judgment obtained by the plaintiff is at least 25 percent less than such offer, and the court shall set off such costs and attorney's fees against the award.

Offer of Judgment addressed to Plaintiff Dictiomatic in the amount of $100,000, inclusive of fees and costs accrued. The Offer of Judgment complies in all respects with the requirements of the applicable statute. Furthermore, because the offer and especially the release which was to be executed by Dictiomatic as a condition of the offer, were not qualified, acceptance of the offer would have disposed of all then-pending claims in all litigation involving Dictiomatic and USF & G. *See generally Security Professionals, Inc. v. Segall,* 685 So.2d 1381 (Fla. 4th DCA) (Pariente, J., holding that the defendant's counterclaim against plaintiffs did not survive an offer of judgment that did not mention the counterclaim because defendant, as offeror, and plaintiffs, as offerees, were parties to the offer of judgment which disposed of "all pending claims" under the agreement), *review denied,* 700 So.2d 687 (Fla.1997). This broad reading of § 768.79 gives full effect to the statute and its purpose of leading litigants to settle by penalizing those who decline offers that satisfy the statutory requirements. *Id.* Accordingly, the court finds that Dictiomatic is, at least, liable for USF & G's attorneys fees pursuant to Fla. Stat. § 768.79. An award of fees pursuant to this statute, however, is limited to those fees incurred after the offer was made. Accordingly, the court must also evaluate the Defendant's alternate basis for an award of fees.

The Defendant also seeks an award of all attorneys' fees incurred in defense of this action, pursuant to Fla. Stat. § 57.105. Section 57.105 and the case law interpreting it set forth the necessary test for determining entitlement to fees. The statute, entitled "Attorney's Fee," provides in subsection (1) in pertinent part:

> The court shall award a reasonable attorney's fee to the prevailing party ... in any civil action in which the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the complaint ....

In *Whitten v. Progressive Casualty Insurance Co.,* 410 So.2d 501 (Fla.1982), the court likened the language of the statute to its definition of a frivolous appeal found in *Treat v. State ex rel. Mitton,* 121 Fla. 509, 510–511, 163 So. 883, 883–884 (1935), that the case would be "one so clearly untenable, ..., that its character may be determined without argument or research." Since *Whitten,* the supreme court has consistently held that fees pursuant to § 57.105 should not be awarded unless the court finds "a total or absolute lack of a justiciable issue, which is tantamount to a finding that the action is frivolous ... and so clearly devoid of merit both on the facts and the law as to be completely untenable." *Muckenfuss v. Deltona Corp.,* 508 So.2d 340, 341 (Fla. 1987) (quoting *Whitten,* 410 So.2d at 505). District courts have followed the dictates of the supreme court and held such fees to be proper only "where the action is so completely devoid of merit both on the facts and the law as to be completely untenable." *Rojas v. Drake,* 569 So.2d 859, 860 (Fla.App.1990); *see also Bronson v. Bronson,* 685 So.2d 994, 995 (Fla.App. 1997) (trial court improperly applied stringent frivolous suit standard to claim for fees under civil theft statute; "a defendant is entitled to an award of attorney's fees only if there is a complete lack of justiciable issue which renders the action completely untenable" citing to *Ciaramello v. D'Ambra,* 613 So.2d 1324, 1325 (Fla. 2d DCA 1991), *review denied,* 599 So.2d 654 (Fla.1992)).

█ The point in time to assess whether the granting of fees pursuant to section 57.105 is appropriate is at the lawsuit's inception, or in other words, at the time of the filing of the complaint. *See Huie v. Dent & Cook, P.A.,* 635 So.2d 111, 113 (Fla. 2d DCA 1994); *Simkins Industries, Inc. v. Lawyers Title Ins.,* 696 So.2d 384 (Fla.App. 1997).

█ The determination as to whether an action is frivolous for the purposes of an award of fees pursuant to

§ 57.105 is subject to an abuse of discretion standard. *See Huie v. Dent & Cook, P.A.,* 635 So.2d 111, 112 (Fla.App.1994). While it is true that "[m]erely losing, either on the pleadings or by summary judgment, is not enough to invoke the operation of the statute," *Carnival Leisure Indus. Ltd. v. Arviv,* 655 So.2d 177, 181 (Fla.App.1995), in this case the plaintiff did not merely lose. The court finds that, at the inception of this action, indeed at the time the original claim was made against the USF & G policy, it "was so clearly devoid of merit on both the facts and the law as to be completely untenable." *Id.* at 181.

While making this determination, the court has undertaken a comparison of the allegations of the Complaint with the Court's Findings of Fact to determine whether the factual allegations were frivolous. For example, Dictiomatic alleged, but never proved, that in July, 1992, it had already made arrangements for marketing the new T–3000 product and that the production of this product was ready to begin in August, 1992, for delivery by the Christmas season that year. Contrarily, the evidence established that, at the time of the Hurricane, this product was not even in the final stages of development and was not ready for production. Further, the court found that the Plaintiff failed to prove that it had marketing in place. The court specifically found that this allegation in the Complaint was pure speculation and that the Plaintiff had not established any loss of income from this nonexistent product. Dictiomatic also alleged that it had developed new distribution channels with travel agents and airlines reservation systems and that the loss of this tool caused considerable financial damage to Dictiomatic. The evidence established, however, that this distribution channel was ineffective from its inception and that the brief loss thereof could not have caused considerable financial damage to Dictiomatic because it was never a source of considerable income for Dictiomatic. Further, while Dictiomatic alleged that its business viability was highly dependant upon anticipated September sales of the T–1500 series product through this reservation system, the evidence established that reasonable, anticipated September sales of the product were, at best, lackluster. Therefore, rather than support the business interruption claim, this allegation and the undisputed evidence establishes that, even without the Hurricane, Dictiomatic's business viability was questionable. Finally, Plaintiff alleged in the Complaint that as a result of Hurricane Andrew, it suffered damages in the amount of "in excess of ten million dollars." The court specifically found that Dictiomatic had not suffered damages as a result of the Hurricane because before the Hurricane, just as after the Hurricane, its business viability was questionable.

At the commencement of the trial of this matter, Mr. Pappas, defense counsel, represented to this court the undisputed facts in support of USF & G's Motion for Dismissal with Prejudice. Based upon the facts set forth by Mr. Pappas on that first day of trial, there was no possible legal or factual basis on which USF & G could have been found liable under the subject insurance policy. Pursuing this claim under clearly established law, with the undisputed facts in hand was so flagrant as to render this action "completely untenable" in the context of awarding frivolous suit fees. The court finds that the factual issues giving rise to the legal conclusions in the present case could have been determined readily "without argument or research," so as to warrant an award of attorneys fees.

■ The fact that the Plaintiff managed to avoid dismissal in the first instance and summary judgment later in the litigation does not impact upon this court's ruling. In fact, Plaintiffs' skillful allegation of "sufficient" facts to support its legal arguments is testament to the conclusion that Plaintiff was, at all stages of the action, *aware,* of the well established, indisputable, controlling legal authorities. This

supports, rather than refutes, a finding that this action was from its inception a frivolous claim. Plaintiffs cannot and do not argue that the controlling law was unsettled. Rather, they alleged facts which they could not prove, to sustain the legal claims pursued. It was the mere *allegation* of facts—facts that simply could not be proved at trial—that caused this action to survive as long as it did. There was no evidence presented by the Plaintiff to support the allegations that caused it to prevail earlier in the litigation. Had the facts as established by the Plaintiff's own evidence at trial been truthfully represented to the court in opposition to the Motion to Dismiss or the Motion for Summary Judgment, the court would have ended the action on the merits at that time.

At the commencement of trial, Mr. Pappas appeared frustrated when he queried of the court and opposing counsel why we were here—he stated again for the record that the relevant facts were not in dispute and he again urged the entry of summary judgment *before 10 days of trial.* Plaintiff's counsel again urged the court to let the matter be heard on the merits because there were facts to dispute Mr. Pappas' allegations. However, at the end of the Plaintiff's case, before the Defendant presented any evidence of its own, the court agreed with Mr. Pappas and adopted as undisputed the very facts he set forth on the first day of trial. These were the very facts which the Plaintiff represented to the court were, at least, in dispute.

Readily aware of the rare and stringent application of an award of fees pursuant to Florida's frivolous claim statute, this court concludes that the present case falls into the narrow class of cases where an award of fees is warranted. The Plaintiff knew the facts. Plaintiff's counsel is charged with knowledge of the law. Neither the facts nor the law having been subject to dispute, the court finds that pursuit of this insurance claim was frivolous. Therefore, an award of fees pursuant to Fla. Stat. § 57.105 is appropriate.

## Counsel's Liability for Fees

▮▮▮▮ Aware that the Plaintiff Dictiomatic is out of business and that its principle Domingo Linale is deceased, the Defendant also seeks an award of fees against Plaintiffs' attorneys pursuant to Title 28 U.S.C. § 1927 which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

This statute was designed to curb exactly the kinds of abuses that Plaintiffs' counsel committed in this case. It allows district courts to "assess attorney's fees against litigants, counsel, and law firms who willfully abuse the judicial process by conduct tantamount to bad faith." *Avirgan v. Hull,* 932 F.2d 1572, 1582 (11th Cir.1991); *Roadway Express Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).(it is well established that a court, in its discretion, may assess attorney's fees against litigants, counsel and law firms who willfully abuse judicial process by conduct tantamount to bad faith). Therefore, this Court has inherent power to assess attorneys' fees when a party has litigated 'in bad faith, vexatiously, wantonly or for oppressive reasons'. *Alyeska Pipeline Service v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Lipsig v. National Student Marketing Corp.,* 663 F.2d 178 (D.C.Cir.1980); *Perichak v. International Union of Electrical, Radio & Machine Workers, Local 601,* 715 F.2d 78 (3rd Cir.1983). It is also well established in this Circuit that:

> [F]iling a lawsuit is not a gratuitous license to conduct infinite forays in search of evidence. When it becomes apparent that discoverable evidence will not bear out the claim, the litigant and

his attorney have a duty to discontinue their quest.

*Collins v. Walden,* 834 F.2d 961, 965 (11th Cir.1987). The bad faith which will warrant an award of fees can be the filing of a groundless action, thereby forcing the Defendant to unnecessarily expend time and effort in conducting a defense, *Gordon v. Heimann,* 715 F.2d 531, 539 (11th Cir. 1983), or bad faith in the conduct of the lawsuit. *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); *Browning Debenture Holders' Committee v. DASA Corp.,* 560 F.2d 1078 (2nd Cir.1977). Moreover, it has been held that under 28 U.S.C. § 1927, when a court finds that counsel has multiplied proceedings 'unreasonably and vexatiously', counsel *must* be required to satisfy personally the fees incurred as a result of such conduct. *See Steinberg v. St. Regis/Sheraton Hotel,* 583 F.Supp. 421 (S.D.N.Y.1984); *Davidson v. Allis–Chalmers Corp.,* 567 F.Supp. 1532, 1538 (W.D.Mo.1983).

 The undersigned has, in the past, not hesitated to impose sanctions upon attorneys personally when it had been established to the satisfaction of the court that the attorney had acted in bad faith. *See, e.g., Carlucci v. Piper Aircraft Corp.,* 775 F.2d 1440 (11th Cir.1985)(affirming the undersigned's imposition of sanctions upon a finding that an attorney had obstructed discovery). In the present case, the undisputed record establishes that Plaintiff's counsel in this action pursued this action when the facts known to him could not sustain a valid legal claim under well-established law. He further instructed his client not to cooperate with the Defendant's pre-suit investigation and not to answer relevant questions during discovery. He also identified himself as a witness with the most knowledge of the facts underlying the insurance claim and then asserted attorney-client privilege and refused to answer discovery questions. By becoming a witness in this matter when the only "facts" he possessed relevant to the insurance claim were given to him by his client

and or created by him in preparation for litigation, Mr Buchanan improperly vouched for his client's frivolous claim. It is also true that, notwithstanding the weakness of his client's claim on the facts under the law, he drafted threatening letters to defense counsel, each time increasing the amount demanded without ever offering proof of *any* business interruption claim. Without expressly finding that Plaintiffs' counsel's course of dealing was extortion, the court does find that the tone of Mr. Buchanan's threatening letters and the huge amounts demanded from the Defendant (at one point $45,000,000. in treble damages) in light of the facts and the small amount possibly at issue, were, at least, inappropriate demands and unprofessional threats with no support in fact or law.

Further, as set forth in greater detail above, upon a comparison of the allegations of the Complaint, which was verified by Plaintiff's counsel, and the Findings of Fact of the court, the undersigned finds that Plaintiff's inability to prove any of the facts alleged to support a claim of lost profits warrants an imposition of sanctions against the attorneys. Specifically, the court finds that Plaintiffs counsel are liable for Defendant's attorneys fees and costs for the filing of a groundless action, thereby forcing the Defendant to unnecessarily expend time and effort in conducting a defense. Additionally, the court finds that Plaintiffs' counsel acted in bad faith in the conduct of the law suit. This is an unusual case wherein Plaintiff's counsel, rather than presenting evidence through his client, himself testified in this action. In fact, the only person the Plaintiffs produced in discovery to support their presentation and calculation of their multi-million dollar supplemental claim was Mr. Buchanan, Plaintiffs' counsel, who was not otherwise a witness to the relevant facts surrounding the fledgling business.

Mr. Buchanan admitted at his deposition that he and his law firm were "advancing" the litigation costs of this action and were handling this case on a contingency fee

basis. This fact, when weighed together with all of the aforementioned curious circumstances of this case, serves to suggest that Mr. Buchanan, a witness and interested party in this case, was more than a mere conduit for his client's frivolous claim. His role in this matter leads to the inevitable conclusion that he was aware, at all times, of the undisputed facts which wholly undermined his client's insurance claim.

If the only potential liability looming overhead for the Plaintiffs if they were unsuccessful in this action, were a possible judgment for Defendant's fees and costs against a defunct corporation, they were free to litigate even this frivolous claim with reckless abandon. In sum, in this case, absent the imposition of fees against counsel, who was so intricately invested in this case, these Plaintiffs had nothing to lose. In view of all of these findings, the court concludes that the law firm of Wampler, Buchanan and Breen is personally liable under 28 U.S.C. § 1927 for the Defendant's attorneys fees and costs incurred in defense of this frivolous matter.

Neither Plaintiff nor counsel has demonstrated any mitigating factors which would counsel this Court against an award of fees. Counsel in essence maintained only that they were vigorously litigating on behalf of a deserving Plaintiff. The Court rejects this explanation. The conduct by Plaintiff's counsel has been far more than vigorous advocacy. They have abused Defendants, their counsel and the judicial system. As the Court of Appeals of the District of Columbia has reasoned:

> [A]dvocacy simply for the sake of burdening an opponent with unnecessary expenditures of time and effort clearly

warrants recompense for the extra outlays attributable thereto.

*Lipsig, supra,* at 181.

### Conclusion

As exemplified by each example set forth above, the Court finds as a matter of fact and concludes as a matter of law that counsel for Plaintiff unreasonably and vexatiously multiplied these frivolous proceedings by proceeding in this case long after it was clear that the law did not afford relief under the undisputed facts. Attorneys' fees are warranted as a deterrent where counsel have demonstrated 'a serious and studied disregard for the orderly process of justice'. *Steinburg, supra,* at 426. USF & G has amply made the required showing. Counsel for Plaintiff used the judicial system to harass and vex USF & G, and to increase dramatically both the number and extent of the proceedings in this case. USF & G is therefore entitled to an award of reasonable attorneys' fees and costs against counsel for Plaintiff personally under 28 U.S.C. § 1927.[3]

The factual findings described above fully support an award of attorneys' fees against Plaintiffs and counsel. On this record, the court has no difficulty in finding that the Plaintiffs and their attorneys unreasonably and vexatiously multiplied these proceedings. Since the Plaintiffs and their attorneys in the law firm of Wampler, Buchanan and Breen chose not to abandon this case long after it was apparent that they could not prove the facts they alleged to defeat the motion to dismiss and the motion for summary judgment, this court finds that an award of attorney's fees and costs against the Plaintiffs and their counsel is appropriate under the applicable law. Therefore, for all the

---

3. The court expressly finds that the facts of this case would support an award of attorneys' fees and costs pursuant to Fed.R.Civ.P. 11 if same had been requested. However, the court will not now *sua sponte* award fees and costs pursuant to said rule because the procedural mechanisms of that rule have not been satisfied. To require further litigation in this regard would be unduly burdensome to the Defendant who has already prevailed on its pursuit of fees and costs pursuant to 28 U.S.C. § 1927, rendering an alternative award of fees pursuant to Rule 11 superfluous.

reasons stated above, USF & G's motion for Judgment For Fees and Costs against Plaintiffs Dictiomatic and Domingo Linale and their counsel, Wampler, Buchanan and Breen, will be granted. This Court holds Plaintiffs and its counsel to be jointly and severally liable for the fees incurred by USF & G in litigating this case.

Fourteen years ago in his concurring opinion in *Carlucci,* Judge Fay forewarned:

> It is my personal observation that too many practitioners have 'sold out to the client'
>
> . . . . .
>
> What we must never forget is that we all serve as 'officers of the court.' Failing in this endeavor, we will lose much more than the case at hand.

*Carlucci,* 775 F.2d at 1454 (Faye, J., specially concurring). Judge Faye was, of course, referencing the loss of integrity and the esteem of the legal profession. Unfortunately, (if the action of Plaintiffs' counsel in the present case is an example), the state of the legal profession today seems to be in no better condition than it was when Judge Faye spoke in 1985. Absent an unabashed imposition of sanctions in cases such as the present case, the courts are otherwise helpless to raise the standards of professionalism in the legal community. Accordingly, it is

**ORDERED and ADJUDGED** that USF & G's Motion for Judgment for Fees and Costs Against Plaintiff and Their Legal Counsel (DE 486–1) is GRANTED. This matter is hereby referred to Magistrate Judge Johnson to hold an evidentiary hearing and to issue a Recommendation as to the reasonable amount of attorneys fees and costs incurred by the defendant USF & G in defense of this case.