**AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, Plaintiff,**

v.

**SOUTHERN MINNESOTA BEET SUGAR COOPERATIVE, Defendant.**

**No. Civ.02–4803 DSD/JSM.**

United States District Court, D. Minnesota.

June 8, 2004.

Terrence R. Joy, William A. Webster, and Robins, Kaplan, Miller & Ciresi, L.L.P., Minneapolis, MN, for plaintiff.

Steven K. Champlin, Eric A. Ruzicka, and Dorsey & Whitney, L.L.P., Minneapolis, MN, for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court upon plaintiff's motion for partial summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, plaintiff's motion is granted in part and denied in part.

## BACKGROUND

The present motion presents two facets of a larger dispute over the proper interpretation and application of a business interruption insurance policy. Defendant Southern Minnesota Beet Sugar Cooperative ("SMBSC") is an agricultural cooperative engaged in the business of extracting, processing and selling sugar from beets grown by its farmer members. SMBSC owns a processing facility at Renville, Minnesota. Among the equipment SMBSC maintains at that facility are four large evaporators which it uses to concentrate "sugar juice" extracted from beets.

On August 27, 2001, the evaporators suffered a structural collapse, rendering them unusable. At the time of the collapse, SMBSC's Renville facility was covered under an insurance policy issued by plaintiff American Guarantee and Liability Insurance Company ("American Guarantee"). (Webster Aff. Ex. 1.) After conferring with American Guarantee, SMBSC processed its beets using evaporators that were older and less efficient than the ones that had failed. SMBSC repaired the collapsed evaporators and returned them to service on November 5, 2001. (See Webster Aff. Ex. 2 at 1.)

SMBSC submitted a claim to American Guarantee for loss of business income caused by the collapse. The claim is based on a provision of the policy which states that American Guarantee will:

... pay for the actual loss of Business Income [SMBSC] sustain[s] from the necessary suspension of [its] operations due to direct physical loss or damage during the period of restoration. The suspension must be caused by Covered Causes of Loss to Covered Property....

(Id. Ex. 1 at 6.) The policy defines the "period of restoration" as:

the period of time that:

1. Begins with the date of direct physical loss or damage by Covered Causes of Loss at the Described Premises; and

2. Ends on the date when the property at the Described Premises should be repaired, rebuilt or replaced with due diligence and similar quality.

(Id. Ex. 1 at 38.)

American Guarantee denied SMBSC's claim and commenced this declaratory judgment action. American Guarantee now moves for partial summary judgment, seeking (1) a declaration that the period of restoration ended on November 5, 2001, and (2) a declaration that "the policy only provides coverage for business income losses which SMBSC proves were caused by the collapse incident and were actually sustained during the defined period of restoration." (Pl.'s Mem. Supp. Mot. Partial Summ. J. at 8.)

## DISCUSSION

### I. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the

moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(c)). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *See id.* at 252, 106 S.Ct. 2505.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the non-moving party. *See id.* at 255, 106 S.Ct. 2505. The non-moving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. 2548. Judgment may be rendered with respect to all or any part of a particular claim. *See* Fed.R.Civ.P. 56(b).

## II. Period of Restoration

The general purpose of business interruption insurance is " 'to do for the business what the business would have done for itself had no loss occurred.' " *Great N. Oil Co. v. St. Paul Fire & Marine Ins. Co.*, 303 Minn. 267, 227 N.W.2d 789, 793 (1975) (quoting *A & S Corp. v. Centennial Ins. Co.*, 242 F.Supp. 584, 589 (N.D.Ill.1965)).[1]

A period of "suspension" or "restoration" is a common feature of business interruption policies. *See Rogers v. Am. Ins. Co.*, 338 F.2d 240, 243 (8th Cir.1964); *Great N. Oil Co.*, 227 N.W.2d at 792–93. The purpose of the period of restoration is to restrict coverage to earnings lost during the period of time "necessary to restore the business to its pre-accident condition." *Great N. Oil Co.*, 227 N.W.2d at 793. Courts have observed that, without a temporal limitation, "[t]here would be no available method to determine with any degree of accuracy the amount of [business interruption] losses." *Rogers*, 338 F.2d at 243, *quoted in Great N. Oil Co.*, 227 N.W.2d at 793.

The "period of restoration" in this case is specifically defined in the policy. " 'Interpretation of an insurance policy and application of the policy to the facts in a case are questions of law. . . .' " *Christensen v. Milbank Ins. Co.*, 643 N.W.2d 639, 642 (Minn.Ct.App.2002) (quoting *Am. Family Ins. Co. v. Walser*, 628 N.W.2d 605, 609 (Minn.2001)). Minnesota courts interpret insurance policies under general principles of contract law. *See Progressive Specialty Ins. Co. v. Widness ex rel. Widness*, 635 N.W.2d 516, 518 (Minn.2001) (citing *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn.1998)). "Where the language of the policy is clear and unambiguous, it is given its usual and accepted meaning." *Id.* at 518. Policy language is ambiguous only if it is reasonably subject to more than one interpretation. *See Am. Commerce Ins. Brokers, Inc. v. Minn. Mut. Fire & Cas. Co.*, 551 N.W.2d 224, 227 (Minn.1996) (citing *Columbia Heights Motors v. Allstate Ins. Co.*, 275 N.W.2d 32, 34–36 (Minn.1979)). Further, courts should interpret a policy

---

1. The parties do not dispute that Minnesota law applies. (*See* Def.'s Mem. Opp'n Pl.'s Mot. Partial Summ. J. at 17.)

so as to give effect to all of its provisions. *See Auto–Owners Ins. Co. v. Evergreen, Inc.*, 608 N.W.2d 900, 903 (Minn.Ct.App. 2000) (quoting *Landico, Inc. v. Am. Family Mut. Ins. Co.*, 559 N.W.2d 438, 440 (Minn.Ct.App.1997)).

The policy states that the period of restoration "[e]nds on the date when the property at the Described Premises should be repaired, rebuilt or replaced with due diligence and similar quality." (Webster Aff. Ex. 1 at 38.) The present dispute focuses on the words "similar quality." SMBSC argues that the condition of the repaired evaporators must be compared to the hypothetical condition of the evaporators as they would have existed had no collapse ever occurred. SMBSC notes that, "[a]t the time of the ... collapse, the evaporators were relatively new but needed to be cleaned due to fouling occurring from previous use." (Def.'s Mem. Opp'n Pl.'s Mot. Partial Summ. J. at 19.) If the evaporators had not collapsed, SMBSC contends that it would have had ample time to clean them before they were again needed. SMBSC therefore argues that the period of restoration did not end on November 5, 2001, because the repaired evaporators, still dirty, were not of "similar quality" to hypothetical clean evaporators that would have existed had no collapse occurred.[2]

American Guarantee argues that the quality of the repaired evaporators must be compared to what actually existed immediately before the collapse. American Guarantee contends that, because the evaporators were dirty before the collapse, no cleaning was necessary to trigger the end of the period of restoration. There-fore, American Guarantee concludes that the period of restoration ended on November 5, 2001, when SMBSC returned the repaired evaporators to service.

Reading the policy as a whole, the court agrees with American Guarantee's construction of "similar quality." The court must construe the policy to effectuate all of its terms. *See Auto–Owners Ins. Co.*, 608 N.W.2d at 903. In addition to coverage of business income loss during the period of restoration, the policy provides coverage for something it calls "extended business income." (Webster Aff. Ex. 1 at 8.) Extended business income coverage "[b]egins on the date property (except finished stock) is actually repaired, rebuilt or replaced and operations are resumed." (*Id.* Ex. 1 at 8.) "Operations" are defined as "[SMBSC's] business activities occurring at the Described Premises." (*Id.* Ex. 1 at 38.) The period of "extended business income" coverage ends the earlier of:

> the date [SMBSC] could restore [its] operations with due diligence, to the condition that would have existed if no direct physical loss or damage occurred; or sixty (60) consecutive days after the date the property is actually repaired, rebuilt or replaced and operations are resumed.

(*Id.* Ex. 1 at 8.)

If the pre-accident condition of the damaged property is used to examine "similar quality," all the policy's clauses may be given effect. In that case, the period of restoration ended on November 5, 2001, when the collapsed, dirty evaporators were replaced with rebuilt, dirty evaporators.

---

**2.** Alternatively, SMBSC argues from principles of modern physics. SMBSC contends that a reasonable juror, considering the fourth dimension of the evaporators, "could conclude that a dirty evaporator with no time available to clean it is not of similar quality to a dirty evaporator that can be cleaned before use." (Def.'s Mem. Opp'n Pl.'s Mot. Partial Summ. J. at 20.) The court concludes, however, that a fair and ordinary reading of the policy does not import the theory of relativity. Therefore, a quality analysis beyond the height, depth and breadth of the evaporators is precluded.

Assuming that extended business income coverage applies,[3] November 5 also marked the beginning of that coverage.

If, on the other hand, the court accepts SMBSC's construction of the policy, both the period of restoration and the period of extended business income coverage would end on the date that operations are restored "to the condition that would have existed if no direct physical loss or damage occurred."[4] (*Id.* Ex. 1 at 8.) Thus, the period of restoration would eclipse and consume the period of extended business income coverage. SMBSC's construction would also render nugatory the policy's limitation of extended business income coverage to a period ending, at the latest, sixty days following repair and resumption of operations. (*See* Webster Aff. Ex. 1 at 8.) Rather, even with operations recommenced, business income coverage would continue for up to two years. (*See id.* Ex. 1 at 8.) In short, SMBSC's construction of "similar quality" would render the extended business income coverage redundant.

Therefore, the court holds that the quality of the evaporators following repair must be compared to their quality immediate preceding the collapse.[5] In light of

that determination, SMBSC has failed to create a genuine issue of material fact regarding the quality of the evaporators. SMBSC concedes that the evaporators were dirty before the collapse and that they were dirty after repair. American Guarantee's requested declaration is therefore appropriate.

## III. Scope of Coverage

American Guarantee also seeks a declaration that "the policy only provides coverage for business income losses which ... were actually sustained during the defined period of restoration." (Pl.'s Mem. Supp. Mot. Partial Summ. J. at 8.) Such a declaration, however, would ignore the policy's express coverage of losses sustained during the extended business income period. (Webster Aff. Ex. 1 at 8.) American Guarantee, therefore, is not entitled to its second requested declaration.

## CONCLUSION

Accordingly, **IT IS HEREBY OR-DERED, ADJUDGED AND DECREED** that:

3. For either business income or extended business income coverage to attach, there must have been a suspension of SMBSC's operations. Because plaintiff's motion does not require the court to determine whether such a suspension took place, it expresses no opinion on the subject.

4. The court is mindful that, while the period of restoration is determined by the quality of the "property," the period of extended business income coverage is governed by the quality of "operations." SMBSC's argument, however, renders this distinction irrelevant. SMBSC is only concerned with the quality of the evaporators insofar as their dirty condition decreased operating efficiency. (*See* Def.'s Mem. Opp'n Pl.'s Mot. Partial Summ. J. at 19.) Indeed, the evaporators' only useful "quality" is their ability to "operate" to process beet juice. Therefore, whether SMBSC's

argument addresses the evaporators' quality as objects in the abstract or as objects in operation, the result is the same.

5. The court also rejects SMBSC's argument that, in effect, American Guarantee is estopped from denying that the period of restoration ended earlier than November 15, 2001, because it once expressed the opinion that November 15 was the appropriate date. (*See* Def.'s Mem. Opp'n Pl.'s Mot. Partial Summ. J. at 21.) That opinion, expressed in an internal memorandum dated August 20, 2002, was based on American Guarantee's misapprehension that SMBSC completed repairs on the evaporators on November 15, 2001. (Mastilak Dep. Ex. 9 at 2.) It was not until November 7, 2002, that SMBSC informed American Guarantee that it had actually returned the evaporators to service on November 5, 2001. (Webster Aff. Ex. 2 at 1.)

1. Plaintiff's motion for partial summary judgment [Docket No. 16] is granted in part and denied in part.

2. The "period of restoration," as that term is defined in the policy before the court, ended on November 5, 2001.